Edward HOBSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0212–CR–578.

Court of Appeals of Indiana.

Sept. 18, 2003.

Katherine A. Cornelius, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Edward Hobson appeals his Murder conviction, following a jury trial, and presents the following issues for review:

1. Whether the State presented sufficient evidence to rebut his claim of self-defense.

2. Whether the trial court abused its discretion when it allowed a police officer to respond to hypothetical

questions regarding shooting accuracy.

3. Whether the trial court committed fundamental error when it responded to a jury question.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Edward Hobson and Marcus Curd are both pre-operative transsexuals[1] who dated Troy Wright. Curd believed that Hobson and Wright had an affair while Curd was still dating Wright. According to Hobson, he was unaware of Curd and Wright's relationship when he and Wright began dating. As a result of the love triangle, Curd and Hobson were at odds. Hobson claimed that after Curd discovered Hobson and Wright's relationship, Curd repeatedly called his residence and threatened him several times. Hobson had knowledge that Curd had spent time in prison and had allegedly stabbed other persons in the past. Curd also took responsibility for a break-in at Hobson's apartment.

On July 19, 2001, Hobson went with friends Stacie Adair and Shovonyai Jones to The Ten, a bar in Indianapolis. Curd was also at the bar with his cousin, William. Curd and Hobson's first confrontation that night occurred in the parking lot; the confrontation was verbal and lasted approximately five to ten minutes. Curd then went back inside the bar, and Hobson stayed in the parking lot. Later, Hobson entered the bar and had another verbal confrontation with Curd and William. Hobson then approached a security guard and told him that he "needed to get [Curd]

out of the club, because he . . . would go to jail that night for fighting him."

Hobson called 911 from the bar shortly after 2:00 a.m. and claimed he was being harassed. The 911 operator told Hobson to wait in the parking lot. But when an officer arrived a few minutes later, Hobson had already left. Shortly before 3:00 a.m., Curd returned to the parking lot and saw Hobson, who had changed clothes. Following another verbal confrontation, the two began fighting. Curd threw the first punch, and Hobson responded with his own punches. The two struggled with one another across the parking lot and eventually separated. Hobson then reached inside his purse, retrieved a .25 caliber Lorcin automatic pistol, and stated, "I am going to kill you."[2] Next, Hobson fired the gun repeatedly until it clicked empty. Curd was running away from Hobson as he fired the multiple shots. Curd suffered five bullet wounds, including a "defensive wound" to his forearm, shots to his back, and a fatal shot that went through his heart and lungs.

After the shooting, William attacked Hobson until guards separated them by using pepper spray. Hobson ran from the scene and met Steven Gaddie, whom he told that he "shot the bitch, and if she keeps bothering me or comes back, I'll shoot her again." Gaddie and Hobson then returned to the parking lot at the bar.

The State charged Hobson with Murder and Carrying a Handgun Without a License, but later dropped the handgun charge. At trial, Hobson admitted that he shot Curd but argued that it was self-defense. Hobson testified that Curd also

---

1. The record shows that Hobson and Curd, who are males, dressed as females. Hobson and other witnesses at trial referred to Hobson and Curd as "she" and "her." For purposes of this opinion, we refer to Hobson and

Curd as males unless we are quoting portions of the transcript.

2. Hobson had two guns in his purse but only retrieved and used one.

had a gun and that Curd shot at him before he began firing at Curd. However, none of the other witnesses stated that Curd had a gun and, in fact, April Moss, one of Curd's friends, stated that she looked in Curd's purse that night and he did not have a gun. In addition, Hobson did not mention that Curd had a gun in statements he gave during the initial investigation.

Also at trial, Hobson stipulated that David Brundage, a tool marks and firearms examiner for the Indianapolis–Marion County Crime Lab, was an expert in tool marks and firearms. After Brundage testified as a State's witness, Hobson called him as a witness for the defense. During the State's cross-examination, Brundage was asked whether, based on his experience with and investigation of cases involving firearms, he would be able to hit a moving target from a certain distance. The State also asked whether officers who had been trained in firearms would be able to hit the same moving target. Hobson objected on the basis that Brundage is "not a forensic pathologist," and the court overruled his objection.

After the jury began deliberations, the jury informed the court that it had questions, one of which was whether "multiple shots preclude[s] self-defense in and of itself." The court determined that it would allow counsel to give brief supplemental arguments on the issue, and neither side objected. The court also informed the jurors that they had the applicable law and that they should reread the jury instructions. Thereafter, the jury found Hobson guilty of murder, and this appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Self–Defense

■ Hobson first asserts that the State failed to present sufficient evidence to re- but his claim of self-defense. Specifically, Hobson points to testimony concerning Curd's criminal past, including his contention that Curd had been stalking him as a result of his relationship with Wright. He also directs us to his testimony that Curd had shown him a gun on the night in question and that he heard shots fired before he began firing at Curd.

■ A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. Ind.Code § 35–41–3–2(a); *Wilson v. State*, 770 N.E.2d 799, 800 (Ind.2002). To prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson*, 770 N.E.2d at 800. When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Id.* The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Id.* at 801. We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id.*

Here, prior to the shooting, Hobson told a security guard that he would fight Curd that night if the guard failed to remove Curd from the bar. In addition, two eyewitnesses to the shooting testified that Hobson was a willing participant in the fight. In particular, Marcus King stated that while Curd threw the first punch, "they were both fighting." April Moss testified that, "they started fighting each other" and that "[Hobson] was hitting

[Curd] back." And at some point when the two separated, Hobson did not withdraw. Rather, he grabbed one of the two guns he had in his purse, stated that he was going to kill Curd, and began shooting. It is reasonable to infer from this evidence that Hobson was a willing participant in the fight.

Further, in *Wilson*, 770 N.E.2d at 800, the defendant was standing on his porch when two acquaintances, Listenbee and Nesbitt, drove by in a car. The three had been involved in a physical altercation two days earlier. Listenbee drove the car past the house and into an alley and removed a gun from the glove compartment. *Id.* The defendant then went inside his house, retrieved a gun, returned to the porch and began shooting at the car. Nesbitt exited the car and fired a few shots before he got back in. As the car sped away, the defendant ran off the porch and into the road firing more shots, one of which hit and killed Nesbitt. *Id.* On appeal from the defendant's murder conviction, the defendant claimed he was not the initial aggressor and was only "returning fire." *Id.* at 801. But our supreme court held that the fact that the defendant continued to shoot after Nesbitt had ceased firing and the car was attempting to leave the area showed that he "could not have been laboring under a reasonable fear of death or great bodily harm." *Id.* (citing *Hollowell v. State*, 707 N.E.2d 1014, 1021 (Ind.Ct.App. 1999) (finding sufficient evidence to rebut self-defense claim when defendant stabbed and continued to pursue initial aggressor with his knife after aggressor retreated)).

Even though Curd was the initial aggressor in this case, like in *Wilson* and *Hollowell,* the fact that Hobson (1) chose to fight back after Curd threw the first punch, and (2) grabbed a gun after the two were separated and then shot Curd in the back as he ran away, supports the conclu-sion that he was not laboring under a reasonable fear of death or great bodily harm. Hobson's arguments to the contrary amount to an invitation that we reweigh the evidence and the credibility of witnesses, which we cannot do. We conclude that the State presented sufficient evidence to rebut Hobson's self-defense claim.

## Issue Two: Brundage's Testimony

Next, Hobson asserts that the trial court abused its discretion when it allowed David Brundage to give his opinion on shooting accuracy. Hobson claims that the State failed to lay a proper foundation for the court to find that Brundage was an expert in marksmanship. He further asserts that Brundage's testimony lacked scientific foundation and was the equivalent of Brundage testifying that Hobson's testimony concerning how the shooting occurred was not credible, which a witness may not do under Indiana Evidence Rule 704(b). We address his arguments in turn.

### A. Qualification as Expert

 Under Indiana Evidence Rule 702, a witness may be qualified as an expert by virtue of "knowledge, skill, experience, training, or education." *Kubsch v. State,* 784 N.E.2d 905, 921 (Ind.2003). Only one characteristic is necessary to qualify an individual as an expert. *Id.* As such, a witness may qualify as an expert on the basis of practical experience alone. *Id.* It is within the trial court's sound discretion to decide whether a person qualifies as an expert witness. *Id.*

Here, when the State called Brundage to testify about the weapons and bullets recovered from the scene, Hobson stipulated to Brundage's expertise "as a firearm and tool marks examiner." Thereafter, when Hobson called Brundage as a defense witness, he noted that he had already stipulated to Brundage's expertise. Then, on cross-examination, the State established

that Brundage had worked on "maybe a thousand" homicide shooting cases as an expert throughout his thirty-year career. He testified that he is familiar with the operation of guns, including shooting and target practice, and that he considers himself a good marksman. In addition, he also testified that he has handled "quite a few" police-action shooting cases, which he explained involves "a shooting where the police are involved, either as the person doing the shooting or maybe shot at by somebody else." Brundage further testified that he has been shooting firearms since he was ten or twelve years' old. The State then asked Brundage the following question:

> I'm over there now—State's Exhibit 1,[3] I'm going to show you this, and I can't say specifically if it's with a right turn or left turn of the wrist. Sir, given this posture, where I'm facing the Judge, and the gun is pointed at the door, with your expertise, how many times could you hit the moving target.

Hobson objected on the basis that Brundage is "not a forensic pathologist," and the court overruled his objection.[4]

■ Initially, we note that Hobson argues on appeal that Brundage is not an expert in marksmanship. His objection at trial, however, was that Brundage is "not a forensic pathologist." Thus, Hobson raises an objection on appeal different than that which he raised at trial. "It is well-settled law in Indiana that a defendant may not argue one ground for objection at trial and then raise new grounds on appeal." *Gill v. State*, 730 N.E.2d 709, 711 (Ind.2000).

■ Still, we cannot conclude that the trial court abused its discretion when it overruled Hobson's objection to the nature of Brundage's expertise. Hobson had already stipulated that Brundage was an expert in firearms. In addition, Brundage testified that he has been shooting guns since age ten or twelve and that he is familiar with both shooting and target practice as a result of his thirty-year career as a firearms and tool mark examiner. He also stated that he considered himself a good marksman. Thus, Brundage's testimony shows that he had practical experience in shooting firearms, and that factor alone is sufficient to qualify him as an expert under Rule 702. *See Kubsch*, 784 N.E.2d at 921.

### B. Objections to Substance of Brundage's Testimony

■ Hobson also asserts that Brundage's testimony lacked scientific foundation and violated Rule 704(b), which prohibits, in part, a witness from testifying "to opinions concerning . . . whether a witness has testified truthfully." But Hobson failed to raise any of these objections at trial and, thus, he has waived those objections on appeal. *See Haycraft v. State*, 760 N.E.2d 203, 211–212 (Ind.Ct.App.2001) (defendant's failure to state objection to admission of evidence together with specific grounds therefore at time evidence is first offered results in waiver on appeal), *trans. denied.*

■ Waiver notwithstanding, even if we were to agree with Hobson that the court erred when it allowed Brundage to give his

---

3. State's Exhibit 1 is the gun Hobson used to shoot Curd.

4. Hobson states in his brief that he also objected on relevance grounds. However, our review of the transcript reveals that he lodged a relevance objection only when the State asked Brundage to define what the term "police action shooting cases" meant. Hobson did not make an objection on relevance grounds when the State asked Brundage to testify about shooting accuracy.

opinion on whether he, or police officers with training in firearms, would be able to hit a moving target from a certain distance, Hobson has not demonstrated that he was prejudiced by Brundage's testimony. We will not overturn a defendant's conviction if a trial court's error was harmless, and harmless error is defined as an error that does not "affect the substantial rights of a party." *Thomas v. State*, 774 N.E.2d 33, 36 (Ind.2002). After Brundage testified that it would be difficult for him or an officer to hit a moving target from the distance specified by the State, Hobson's counsel questioned Brundage on redirect, and Brundage admitted that he had no personal knowledge of any distance involved in the case or of Hobson's skill level with a gun. In addition, the primary issue in the case was whether Hobson acted in self-defense when he shot Curd, and we have already determined that the State presented sufficient evidence to rebut Hobson's self-defense claim. In sum, even assuming error occurred, Hobson cannot establish that the six-pages of transcript testimony from Brundage regarding shooting accuracy affected his substantial rights and requires reversal of his conviction.

### Issue Three: Jury Question

 Finally, Hobson contends that the trial court committed fundamental error when it responded to a question from the jury regarding his claim of self-de-

fense.[5] Fundamental error is error that, if not corrected, would deny a defendant fundamental due process. *Brown v. State*, 691 N.E.2d 438, 444 (Ind.1998). The error must be so prejudicial to the rights of a defendant as to make a fair trial impossible. *Id.*

During closing argument, the State argued that the fact that Hobson shot Curd three times in the back constituted murder, not self-defense. The State then described a 2001 Indiana Supreme Court decision that involved a defendant who fired five shots at the victim as the victim ran away. The State told the jury that the "court's comment ... in examining self-defense was that firing multiple shots undercut a claim of self-defense[,] as we can all with common sense imagine." Hobson's counsel objected, and the court overruled the objection but reminded the jury that the facts in this case are not the same facts presented in the Supreme Court case.

After the jury had retired for deliberations, it posed the following question to the court: whether firing "multiple shots preclude[s] self-defense in and of itself." The court determined, relying on Indiana Jury Rule 28, *Tincher v. Davidson*, 762 N.E.2d 1221 (Ind.2002), and *Thomas v. State*, 774 N.E.2d 33 (Ind.2002), that it would allow counsel to present one minute each of supplemental argument on the question presented.[6] The court then addressed the

---

**5.** Hobson raises fundamental error because his counsel failed to lodge a timely objection to the court's manner of responding to the jury's question.

**6.** The court noted that Indiana Jury Rule 28 did not go into effect until January 2003, but it nevertheless used that rule as guidance. Jury Rule 28 provides:

If the jury advises the court that it has reached an impasse in its deliberations, the court may, but only in the presence of counsel, and, in a criminal case the parties,

inquire of the jurors to determine whether and how the court and counsel can assist them in their deliberative process. After receiving the juror's response, if any, the court, after consultation with counsel, may direct that further proceedings occur as appropriate.

While the rule was not in effect at the time of Hobson's trial, we find no error in the court referring to the rule for guidance. *See Tincher*, 762 N.E.2d at 1224, n. 2 (utilizing Jury Rule 28 in case tried prior to rule's effective date).

jury, informed the jurors that counsel would present brief argument on their question, and further advised them that they already had the applicable law before them and to reread the jury instructions when they returned to the jury room to continue deliberations. Thereafter, in addressing the jury's question whether firing multiple shots precluded self-defense, Hobson's counsel argued, in part, that "[t]he simple answer is no." The State responded that it "did not disagree" with Hobson's counsel and that:

> The law clearly is not going to tell you when you have multiple shots to the back of another person running away— no, they're never going to tell you ... [that] you cannot find self-defense, but nevertheless, the Supreme Court is going to have rulings of law to be of assistance, and actually the law that was referred to in the Mays' case came from Miller, Indiana Supreme Court 1999, we have previously felt that *the firing of multiple shots—now notice the word here, does not eliminate or deny, but it says undercuts the claim of self-defense.*

(Emphasis added). Thus, both counsel for Hobson and the State correctly informed the jury that firing multiple shots does not preclude a claim of self-defense.

On appeal, Hobson asserts that because the jury asked a pure legal question, it was error for the court to allow counsel to present further argument to the jury. Instead, Hobson maintains that the court should have answered the jury's question by informing the jurors that firing multiple shots does not preclude a claim of self-defense. We cannot agree.

■■ Indiana Code Section 34–36–1–6 addresses a jury's request for information after deliberations have started and provides:

> If, after the jury retires for deliberation:

> (1) there is a disagreement among the jurors as to any part of the testimony; or

> (2) the jury desires to be informed as to any point of law arising in the case;

> the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

That statute does not mandate that the trial court provide information automatically and mechanically every time the jury requests it. *Foster v. State,* 698 N.E.2d 1166, 1170 (Ind.1998). Rather, the trial court should initially exercise discretion in determining whether it should answer certain questions of the jury. *Id.* Under the statute, if the trial court determines that the question posed or information requested relates to "a disagreement" among the jurors "as to any part of the testimony" or reflects the jury's desire "to be informed as to any point of law arising in the case," I.C. § 34–36–1–6, the court must then supply the requested information, to the extent that it consists of properly admitted testimony or documentary evidence, or answer the legal question. *Id.*

■ As our supreme court explained further in *Tincher,* 762 N.E.2d at 1223:

> Trial courts are required to respond to jury inquiries "as to any point of law arising in the case." In addition, our new Indiana Jury Rule 28 urges that trial judges facilitate and assist jurors in the deliberative process, in order to avoid mistrials. Under appropriate circumstances, and with advance consultation with the parties and an opportunity to voice objections, a trial court may, for example, directly seek further information or clarification from the jury regarding its concerns, may directly answer the jury's question (either with or without directing the jury to reread the

other instructions), may allow counsel to briefly address the jury's question in short supplemental arguments to the jury, or may employ other approaches or a combination thereof.

(Citations and footnote omitted).

Here, the trial court employed a combination of two of the approaches discussed in *Tincher*, namely, the court allowed counsel to present brief supplemental argument and also advised the jury that it had the applicable law in the form of the jury instructions and that it should reread those instructions. Hobson's assertion that the answer to the jury's legal question must come from the trial court instead of attorneys through supplemental argument finds no support in the law. Additionally, in this case, both attorneys gave the jurors the same answer, that firing multiple shots does not preclude a claim of self-defense. The court's decision to further instruct the jury that it had the applicable law before it and to reread the jury instructions as a whole was proper. *See Riley v. State*, 711 N.E.2d 489, 493 (Ind.1999) (stating generally accepted procedure in answering jury's question on matter of law is to reread all instructions to avoid emphasizing any particular point and not to qualify, modify, or explain instructions in any way). Finally, because the jury received the correct answer to its legal question, Hobson cannot demonstrate that a fair trial was impossible. *See Brown*, 691 N.E.2d at 444. Thus, we hold that Hobson's claim of fundamental error fails.

Affirmed.

ROBB and MATHIAS, JJ., concur.