Jeremy D. SIMPSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 46A04–0802–CR–103.

Court of Appeals of Indiana.

Oct. 27, 2009.

Transfer Denied Jan. 7, 2010.

Donald W. Pagos, Michigan City, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Jeremy D. Simpson appeals his convictions for class A felony voluntary man-

slaughter and class D felony criminal recklessness. We affirm.

### Issues

I. Did the State present sufficient evidence of probative value to allow the jury to negate Simpson's claim that he was legally justified in shooting the victim to defend a third person?

II. Did the trial court commit reversible error in denying Simpson's request to recall a State's witness?

III. Did the trial court abuse its discretion in refusing Simpson's jury instruction regarding the presumption of innocence and witness credibility?

### Facts and Procedural History[1]

The facts most favorable to the jury's verdict indicate that on August 3, 2006, a funeral was held for Carlon Bush's eleven-year-old daughter, who drowned in a swimming accident. After the funeral, Bush went to the home of his daughter's mother with his brother, Thomas Ferrell. At approximately 7:00 that evening, Bush broke up an argument between Simpson and another man. Simpson left the area.

At approximately 1:00 a.m., Bush was in front of the home with Ferrell, Jeffrey Cooper, Rodney Liggins, and several others when Simpson arrived in a car with Walter Thompson and Derrick Samuels. The three men walked up to the home. Thompson looked directly at Cooper and said, "You're on the wrong team. Don't nobody make no money unless I make some money." Tr. at 1097. Cooper responded, "You're messin' with the wrong

person." *Id.* Cooper walked down the street, retrieved a handgun from his car, and walked back toward the house. Thompson and his cohorts returned to their car. Thompson said, "I ain't scared of that n* * * *r," and approached Cooper in the middle of the street. *Id.* at 181.

Liggins attempted to pacify Cooper, who struck him in the face with the handgun. Cooper then struck Thompson in the jaw with the handgun, and Thompson fell to the ground. Cooper kicked and hit Thompson and then bent over him and said, "I ought to kill you but I'm not." *Id.* at 184. Thompson said, "Okay, whatever, don't hit me no more, don't hit me no more." *Id.* at 270. Cooper replied, "I'm gonna tell you why you got what you got." *Id.* at 245. According to Ferrell, Cooper "pointed [the handgun] away" and talked to Thompson for "three or four minutes." *Id.* at 190, 193. Ferrell grabbed Cooper's shoulder and said, "If you're not gonna do nothin' to him, let him go." *Id.* at 194. At that point, Bush saw Simpson "come up behind [Cooper] shooting" a handgun and heard Simpson say, "Get off of him." *Id.* at 1112, 1113. One bullet struck Ferrell in the arm. Cooper was struck at least five times, including once in the back, and fell on top of Thompson. Bush fired shots at Thompson and Simpson, who fled. Cooper later died from his wounds.

On August 8, 2006, the State charged Simpson with murder and class D felony criminal recklessness. On December 11, 2007, after a seven-day trial, the jury found Simpson guilty of class A felony voluntary manslaughter (a lesser-included offense of murder)[2] and criminal recklessness. This appeal ensued.

1. We heard oral argument on October 6, 2009, at the Marion campus of Indiana Wesleyan University. We thank the university's staff, faculty, and students for their interest and hospitality, and we thank counsel for their presentations.

2. *Compare* Ind.Code § 35–42–1–1 (defining murder as the knowing or intentional killing

## Discussion and Decision

### I. Defense of Third Person

At trial, Simpson asserted that he shot and killed Cooper to defend Thompson, who was beaten and kicked while lying in the middle of the street.[3] "A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act." *Hobson v. State*, 795 N.E.2d 1118, 1121 (Ind.Ct.App.2003), *trans. denied.* Indiana Code Section 35–41–3–2(a) states that "[a] person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." "[T]he force used must be proportionate to the requirements of the situation." *McKinney v. State*, 873 N.E.2d 630, 643 (Ind.Ct.App.2007), *trans. denied.* A person is justified in using deadly force only "if the person reasonably believes that that force is necessary to prevent serious bodily injury" to the third person or the commission of a forcible felony. Ind.Code § 35–41–3–2(a).[4] Our supreme court has explained that "reasonably believes," as used in Indiana Code Section 35–41–3–2, "requires both subjective belief that force was necessary to prevent serious bodily injury, and that such actual belief was one that a reasonable person would have under the circumstances." *Littler v. State*, 871 N.E.2d 276, 279 (Ind.2007).

To prevail on a claim of self-defense or defense of a third person, "the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm." *Ballard v. State*, 808 N.E.2d 729, 732 (Ind. Ct.App.2004), *aff'd in relevant part*, 812 N.E.2d 789 (Ind.2004). When a claim of defense of a third person is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements beyond a reasonable doubt. *See id.* (referring to self-defense); *Moon v. State*, 823 N.E.2d 710, 716 (Ind.Ct.App.2005) (stating burden of proof), *trans. denied.* "The State may meet its burden by either rebutting the defense directly or relying on the sufficiency of evidence in its case-in-chief." *Ballard*, 808 N.E.2d at 732. We review a challenge to the sufficiency of the evidence to rebut such a defense using the same standard as for any claim of insufficient evidence. *Id.* "Accordingly, we neither reweigh the evidence nor judge the credibility of the witnesses. If there is sufficient evidence of probative value to support the conclusion of the trier-of-fact, then the ver-

---

of another human being) *with* Ind.Code § 35–42–1–3 (defining class A felony voluntary manslaughter as the knowing or intentional killing of another human being by means of a deadly weapon while acting under sudden heat).

3. At trial, the jury was instructed on both self-defense and defense of a third person. *See* Appellant's App. at 28 (final instruction 14). On appeal, Simpson addresses only the latter defense.

4. Indiana Code Section 35–41–1–25 defines "serious bodily injury" in pertinent part as

"bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; [or] (4) permanent or protracted loss or impairment of the function of a bodily member or organ[.]" Indiana Code Section 35–41–1–11 defines "forcible felony" as "a felony that involves the use or threat of force against a human being, or in which there is imminent danger of bodily injury to a human being." Indiana Code Section 35–41–1–4 defines "bodily injury" as "any impairment of physical condition, including physical pain."

dict will not be disturbed." *Id.* (citation omitted).[5]

Simpson contends that he was justified in shooting Cooper because Thompson "was receiving serious bodily injury" and was "curled up in a ball begging Cooper to stop beating him." Appellant's Br. at 5. We note, however, that at least three eyewitness testified that the fight between Cooper and Thompson was over when Simpson started shooting. *See* Tr. at 189, 195 (Thomas Ferrell), 746 (Demetrius Cooper), and 1112 (Carlon Bush). This evidence indicates that Simpson shot Cooper in retaliation for beating Thompson, rather than to defend Thompson from Cooper's blows. In other words, when Simpson shot Cooper, he "could not have been laboring under a reasonable fear of death or great bodily harm." *Wilson v. State,* 770 N.E.2d 799, 801 (Ind.2002). Also, Simpson's firing of multiple shots, one of which hit an innocent bystander, indicates that the force used was not proportionate to the requirements of the situation. *Cf. Randolph v. State,* 755 N.E.2d 572, 576 (Ind.2001) ("[F]iring multiple shots undercuts a claim of self-defense."). Therefore, we conclude that the State presented sufficient evidence of probative value to allow the jury to negate Simpson's defense.

## II. Denial of Simpson's Request to Recall Witness

■ While awaiting trial, Simpson was incarcerated at the LaPorte County Jail. At trial, the State called as a witness Simpson's fellow inmate Brian Gates, who had been incarcerated for two counts of theft since February 2006. Gates testified that Simpson told him that he shot Cooper "[b]ecause he was pistol whipping his friend." Tr. at 829. According to Gates, Simpson said that he "unloaded the whole gun" on Cooper and that when he was finished, Cooper "looked like swiss cheese." *Id.* at 831. Simpson told Gates that he shot Cooper before Cooper "had a chance to point the gun at him" but that he was "gonna try and say that [Cooper] was going to try and shoot him" to make it look like a "justifiable homicide[.]" *Id.* at 832.

Gates further testified that "around November 1st" he had written a letter to the prosecutor's office regarding Simpson's statements in which he asked if he "could get out of jail or be placed in another facility for [his] safety" as a result of "threats" involving Simpson's case and "a previous case." *Id.* at 833–34.[6] Gates stated that he was testifying against Simpson "because it's the right thing to do" and denied that the prosecutor had promised to "let [him] out" or "do anything in regards to [his] testimony" other than ensure that he "would be at a safe location in the jail[.]" *Id.* at 838–39. On cross-examination, Simpson's counsel asked if Gates was "hoping that [his] sentence is modified so [he] can get out of jail[.]" *Id.* at 845. Gates replied, "No, I'm just, I'm hoping that I can be protected from people I've already been threatened for testifying in this trial, sir." *Id.* After redirect, the trial court allowed Gates to "step down." *Id.* at 863.

Two days later, Simpson's counsel learned that Gates had written a letter to

---

5. Simpson has failed to include in his appellant's brief "a concise statement of the applicable standard of review" for any of the issues as required by Indiana Appellate Rule 46(A)(8)(b).

6. Gates testified that he first spoke with Simpson in August or September of 2006 but did not disclose this information to the authorities until November 2007 because "the longer a trial takes the more time a person has to plot against you. And [Simpson] also knows, he claims he knows some of my family and I'm scared for myself and them." Tr. at 854–55.

the trial court requesting sentence modification or early release based on concerns for his safety. In the letter, Gates stated that between August 8 and October 17, 2007, he had received one death threat, had urine thrown on him, and been assaulted three times. Defendant's Ex. J. The letter does not mention either Simpson or Simpson's case. The State requested a bench conference on the matter.[7]

The trial court stated that Gates had written the letter "about a month ago[.]" Tr. at 1353. The prosecutor stated that she had not received a copy of the letter, and the judge replied that he had sent it to the prosecutor who "does all the modifications[.]" *Id.*[8] Simpson's counsel noted that while on the witness stand, Gates "tried stating that he never filed for a modification or to get out of jail, which he did." *Id.* at 1355. The court replied that Gates "was not a material witness" and "didn't lie about a material fact." *Id.* at 1356. The court then reviewed the transcript of Gates's cross-examination and acknowledged, "So he did say something to the contrary. He is hoping to be modified. He has a pending modification." *Id.* at 1359. The court went on to say,

I don't think this is a major point that needs [Gates] to be back into Court. I think that if the parties are reasonable, they can simply stipulate a statement be

made that contrary to what he said, he did have a pending modification unrelated to this trial with this Court.

*Id.* at 1359–60. The court further stated,

It's a minor point. And the minor point is [Gates] had a pending modification unrelated to this—his testimony here. I'm not allow—I'm not gonna allow [Simpson] to bring him into trial, but I'm going to allow the Jury to be advised that he, in fact, had a pending modification unrelated to the trial here. Contrary to his response.

*Id.* at 1361 (paragraph format altered). Simpson's counsel asked the court to "note [his] objection" to this ruling. *Id.* at 1362. Counsel then asked, "[J]ust for clarification purposes, when you indicated it could be brought to the attention of the jury, can we simply admit a copy of [Gates's] letter?" *Id.* at 1362–63. The trial court replied, "No." *Id.* at 1363.

After further discussion, however, the court stated, "You know what? I say we, we just—fine. We'll introduce the—we'll let [the jury] read the letter." *Id.* at 1365. The court asked the prosecutor if she had "an objection to that[,]" and she responded, "I just don't think that . . . the characterization of this letter necessarily means that he is requesting his sentence to be reduced." *Id.* The court responded, "You know, he does say that in the first sen-

---

**7.** The prosecutor said,

It's the State's understanding that the defense may be presenting a witness in rebuttal to the State's evidence in regard to Mr. Gates. The—it's my understanding that it's possible that the defense intends to recall him in regards to a letter that was apparently received by the Court that the defense had noted on the record at some point on Friday. And what the State would like would be an offer of proof in regards to that matter.

Tr. at 1352–53.

**8.** When Simpson's counsel offered the prosecutor a copy of the letter, the trial court stated,

No, it's demonstrative evidence. It doesn't get admitted to the jury. This is just something you put in with the transcript. . . . It's not an admitted, it—just to be clear. On things that you've referred to for witnesses to read or whatever, they're marked, they just go—they become part of the record. They're not admitted as exhibits that go into the Jury, but they are kept by you to include for record on appeal.

Tr. at 1354.

tence of the second paragraph, but—I would like to consitter (phonetic) me for an early release." *Id.* Simpson's counsel then said, "Judge, just to make the record clear. Now I'm moving to admit what's been marked for identification purposes, Defendant's Exhibit J, which is the letter we're speaking about." *Id.* The court replied, "I'm gonna inform [the jury] that Mr. Gates had written a prior letter to the Court, unrelated to his testimony today. That was a request for modification to a different location or early release.... Bring the Jury in." *Id.* at 1365–66. The State rested its case, after which the trial court informed the jury that Gates "did have on record with this Court, unrelated to his testimony here, a pending letter requesting that he be housed elsewhere or released early" based on "[s]afety concerns unrelated to this case." *Id.* at 1367.[9] There is no indication that the letter was published to the jury.

▪▪▪ On appeal, Simpson asserts that the trial court erred "[i]n refusing to allow [him] to recall Gates in his case-in-chief." Appellant's Br. at 8. The decision whether to permit the recall of a witness is within the trial court's sound discretion. *Byrd v. State,* 707 N.E.2d 308, 311 (Ind.Ct.App. 1999). "An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court." *Davis v. State,* 907 N.E.2d 1043, 1048 (Ind.Ct.App.2009).[10]

To reverse a trial court's decision to exclude evidence, there must have been error by the court that affected the defendant's substantial rights *and* the de-fendant must have made an offer of proof or the evidence must have been clear from the context. This offer to prove is necessary to enable both the trial court and the appellate court to determine the admissibility of the testimony and the prejudice which might result if the evidence is excluded. The purpose of an offer of proof is to convey the point of the witness's testimony and provide the trial judge the opportunity to reconsider the evidentiary ruling. Equally important, it preserves the issue for review by the appellate court.

*Woods v. State,* 892 N.E.2d 637, 641–42 (Ind.2008) (citations and quotation marks omitted); *see also* Ind. Evidence Rule 103 ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked.").

Specifically, Simpson contends that "[i]n refusing to allow Simpson to recall Gates in his case-in-chief, the Court denied Simpson's right to confront and cross-examine witnesses. The defense had only just begun its case-in-chief and Gates was going to be their first witness." Appellant's Br. at 8. Simpson further contends that the trial court's statement to the jury was "faulty" and that the issue of whether Gates's letter was unrelated to Simpson's case "would have been a jury question or fodder for cross-examination, since Gates

---

9. Immediately prior to this, the trial court told the jury, "[I]t should be noted regarding the prior testimony of Brian Gates. Mr. Gates did have on file with this Court some time ago, and unrelated to his testimony in this case, a request for either change of scenery so to speak, or early release." Tr. at

1366. Simpson's counsel said, "Judge, I don't think all the Jurors could hear[,]" whereupon the court made the statement quoted above. *Id.*

10. Simpson does not raise any claim of error regarding the disposition of Gates's letter.

was in jail with Simpson when the letter was written." *Id.*

We note that Simpson did not make an offer of proof to convey the point of Gates's testimony, but it seems apparent from the context of the bench conference that Simpson intended to impeach Gates's credibility with the letter. While the better practice would have been to allow Simpson to call Gates as a witness (which, as the State conceded at oral argument, would have required relatively little time and effort), we cannot conclude that the trial court prejudiced Simpson's substantial rights by not allowing him to recall Gates to the stand. At oral argument, the State pointed out that Gates's testimony went only to Simpson's subjective belief regarding the necessity of using force to protect Thompson from Cooper's assault. Moreover, as mentioned above, Gates testified and was cross-examined about a similar letter in which he asked the prosecutor if he "could get out of jail or be placed in another facility for [his] safety" as a result of "threats" involving Simpson's case and "a previous case." Tr. at 833–34.[11] Although the refusal to admit the letter as an exhibit was probably error, we believe that the trial court accurately described Gates's letter to the jury. In sum, any error in the trial court's ruling can only be considered harmless.

### III. Refusal of Simpson's Jury Instruction

■ At the close of trial, Simpson tendered the following final jury instruction:

You should attempt to fit the evidence to the presumption that the Accused is innocent.

If the evidence in this case is susceptible of two (2) constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the accused, and the other to his innocence, it is your duty, under the law, to adopt the interpretation which is consistent with the Accused's innocence, and reject that which points to his guilt.

Appellant's App. at 10. The instruction cites our supreme court's decision in *Robey v. State*, 454 N.E.2d 1221 (Ind.1983). *Id.* at 11.

The trial court refused Simpson's instruction on the basis that its substance was covered by one of its own instructions, which reads as follows:

You are the exclusive judges of the evidence, the credibility of the witnesses, and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe; the manner and conduct of the witness while testifying; any interest, bias, or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all of the evidence in the case.

You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony, you must determine which of the witnesses you will believe and which of them you will disbelieve.

**11.** For this reason, especially, we are unpersuaded by Simpson's reliance on *Rhea v. State*, 814 N.E.2d 1031 (Ind.Ct.App.2004), *trans. denied,* and *Rowe v. State*, 704 N.E.2d 1104 (Ind.Ct.App.1999), *trans. denied,* which he cites in a statement of additional authorities submitted pursuant to Indiana Appellate Rule 48.

In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience, and common sense gained from day-to-day living. The number of witnesses who testify to a particular fact or the quantity of evidence on a particular point need not control your determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

*Id.* at 35 (final instruction 20).

■■■ Simpson contends that the trial court erred in refusing his tendered instruction. "The manner of instructing a jury lies largely within the sound discretion of the trial court, and we review the trial court's decision only for an abuse of that discretion." *Boney v. State,* 880 N.E.2d 279, 293 (Ind.Ct.App.2008), *trans. denied.*

> In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court.

*Id.*

Simpson contends that "[w]hile the Court's instruction does inform the jury to fit the evidence to the presumption of innocence, none of the court's instructions or combination of instructions informed the jury of their duty when the case is suscep-

tible of two constructions or interpretations." Appellant's Br. at 9. Simpson quotes *Robey* for the proposition that " '[a]n instruction of this character which advises the jury that the presumption of innocence prevails until the close of trial, and that it is the duty of the jury to reconcile the evidence upon the theory of the defendant's innocence i[f] they could do so, must be given if requested.' " *Id.* (quoting *Robey,* 454 N.E.2d at 1222).[12]

Simpson's instruction is based on one of the instructions given by the trial court in *Robey,* which reads in pertinent part as follows:

> If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt.

> You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof

---

**12.** The *Robey* court made this statement in reference to the defendant's refused instruction, which reads as follows:

> The law presumes the defendant to be innocent of the crime charged, and this presumption continues in his favor throughout the trial of this cause. It is your duty, if it can be reasonably and conscientiously done to reconcile the evidence upon the theory that the defendant is innocent, and

> you cannot find the defendant guilty of the crime charged in the information unless the evidence satisfies you beyond a reasonable doubt of his guilt.

454 N.E.2d at 1222. The *Robey* court determined that the substance of this instruction was covered by the trial court's instructions and held that the court did not err in refusing to give the instruction. *Id.*

must carry the convincing force required by law to support a verdict of guilt.

454 N.E.2d at 1222.

The State contends that Simpson's tendered instruction was "incomplete because it failed to inform the jury that they could in fact conclude that one of the two opposing conclusions was unreasonable." Appellee's Br. at 11. The State further contends that "[o]ur Supreme Court's holding in *Robey* simply required an instruction that the jury should fit the evidence to the presumption that a defendant is innocent" and that the trial court's instruction "informed the jury as required by *Robey*." *Id.* We agree with the State and therefore conclude that the trial court did not abuse its discretion in refusing Simpson's instruction. Consequently, we affirm Simpson's convictions.

Affirmed.

BAKER, C.J., and BRADFORD, J., concur.