## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 08 2020, 8:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Samuel J. Beasley
Muncie, Indiana

Tyler E. Burgauer
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DaShawn D. Drye,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 8, 2020

Court of Appeals Case No.
20A-CR-516

Appeal from the Delaware Circuit Court

The Honorable Thomas A. Cannon, Jr., Judge

Trial Court Cause No.
18C05-1805-F1-3

**Najam, Judge.**

## Statement of the Case

DaShawn Drye appeals his conviction for criminal recklessness, as a Level 6 felony, following a jury trial. Drye presents two issues for our review:

1. Whether the trial court erred under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution when it limited Drye's cross-examination of the victim about the victim's criminal history.

2. Whether the State presented sufficient evidence to support his conviction.

We affirm.

## Facts and Procedural History

On May 5, 2018, Drye and several other people were having an argument inside a Marathon convenience store in Muncie when Amare'on Davis arrived. Davis' girlfriend was part of the group engaged with Drye, and Davis asked the group, generally, what was going on. Drye responded to Davis, "B**** a** need to mind your business." Tr. Vol. 3 at 81. In response, Davis punched Drye in the face, and the two men began physically fighting. At some point, Davis noticed that Drye was holding a gun. The two men continued to struggle, and Drye shot Davis' knee. Davis then ran toward the exit, and Drye fired multiple shots at Davis. Davis finally exited the store and fell to the ground. Drye followed and shot Davis four more times while he was lying on the ground. Davis then dragged himself into the passenger seat of a friend's car,

and his friend drove him to the hospital. Drye left the scene in his car. A short time later, a Delaware County Sheriff's Deputy found Drye and arrested him.

[4] The State charged Drye with attempted murder, a Level 1 felony; aggravated battery, as a Level 3 felony; criminal recklessness, as a Level 6 felony; and carrying a handgun without a license, as a Class A misdemeanor. Prior to his trial, Drye pleaded guilty to carrying a handgun without a license. At an ensuing jury trial on the remaining counts, Drye began to question Davis about "two serious felony charges" Davis had pending on the date of the shooting. *Id.* at 99. The State objected, and, during an offer of proof, Drye questioned Davis about a possible motive to testify for the State in Drye's trial in exchange for leniency on the pending charges in a prior, unrelated case. The trial court found that, because there was no evidence of an agreement between the State and Davis for Davis' testimony at Drye's trial, Drye was only permitted to question Davis about prior convictions listed in Evidence Rule 609.

[5] At the conclusion of trial, the jury acquitted Drye of attempted murder and aggravated battery but convicted him of criminal recklessness, as a Level 6 felony. The trial court entered judgment of conviction accordingly and sentenced Drye to two and one-half years executed. This appeal ensued.

## Discussion and Decision

### *Issue One: Cross-examination of Davis*

[6] Drye contends that the trial court violated his right to confront a witness against him under the Sixth Amendment to the United States Constitution and Article

1, Section 13 of the Indiana Constitution when it did not allow Drye to cross-examine Davis regarding two criminal charges that were pending against Davis at the time of the shooting. As the Indiana Supreme Court has stated:

> Generally, a trial court's ruling on the admission of evidence is accorded "a great deal of deference" on appeal. *Tynes v. State*, 650 N.E.2d 685, 687 (Ind. 1995). "Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion" and only reverse "if a ruling is 'clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (quoting *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013)).

*Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015). But where, as here, "'a constitutional violation is alleged, the proper standard of appellate review is de novo.'" *Id.* (quoting *Speers v. State*, 999 N.E.2d 850, 852 (Ind. 2013)).

[7] It is well settled that

> [t]he Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Sixth Amendment right to confrontation is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Article 1, Section 13 of the Indiana Constitution similarly provides that "[i]n all criminal prosecutions, the accused shall have the right to . . . meet the witnesses face to face." Both the Sixth Amendment and Article 1, Section 13 guarantee the right to cross-examine witnesses. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *McCarthy v. State*, 749 N.E.2d 528, 533 (Ind. 2001).

*McCain v. State*, 948 N.E.2d 1202, 1206 (Ind. Ct. App. 2011). But the right to cross examine witnesses "is subject to reasonable limitations placed at the discretion of the trial judge." *Smith v. State*, 721 N.E.2d 213, 219 (Ind. 1999).

[8] Here, during Drye's cross-examination of Davis, Drye asked Davis about "two serious felony charges" pending against Davis at the time of the shooting. Tr. Vol. 3 at 99. The State objected, and, in an offer of proof, Davis testified that, in October 2016, the State had charged Davis with kidnapping and armed robbery. Davis was out on bond for those charges when Drye shot him in May 2018. And in July 2018, Davis pleaded guilty to kidnapping. In exchange for his guilty plea, the State dismissed the armed robbery charge. Drye asked Davis whether Davis "had a bunch of motivation for the prosecutor's office to not see [him] as the villain in this case," and Davis agreed. *Id.* at 103. However, Davis did not testify that the State had offered him a deal in exchange for his testimony against Drye. Pursuant to Indiana Evidence Rule 609(a), the trial court permitted Drye to impeach Davis with evidence of Davis' kidnapping conviction. But the trial court excluded questions about the pending armed robbery charge at the time of the shooting or Davis' possible bias in favor of the State.

[9] "The exposure of a witness's motivation in testifying is a proper and important function of the constitutionally-protected right of cross examination." *McCain*, 948 N.E.2d at 1206 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Accordingly, "'[a] defendant in a criminal case is entitled to apprise the jury of the existence of any *agreement* between the prosecution and its witness.'" *Id.*

(citing 13 Robert Lowell Miller, Jr., Indiana Practice: Indiana Evidence § 616.102 (3d ed. 2007); emphasis added). However, here, there is no evidence that the State agreed to drop the armed robbery charge against Davis or offered any type of leniency in exchange for Davis' testimony against Drye. Davis' mere acknowledgement that he was motivated, generally, to present himself in a favorable light to the prosecutor's office is not the same thing as an agreement with the State. Accordingly, the trial court did not violate Drye's right to cross-examine a witness against him when it prohibited him from questioning Davis about the pending armed robbery charge. *See Collins v. State*, 835 N.E.2d 1010, 1015 (Ind. Ct. App. 2005) (holding no violation of constitutional rights to cross-examine witness where offer of proof showed no agreement between witness and State in exchange for testimony), *trans. denied*.

### Issue Two:  Sufficiency of the Evidence

[10]   Drye also contends that the State presented insufficient evidence to support his criminal recklessness conviction. In particular, Drye asserts that the jury's acquittal on the attempted murder and aggravated battery charges means that the jury believed that Drye shot Davis in self-defense. And, Drye posits, because he acted in self-defense, his conviction for criminal recklessness cannot stand.

[11]   "'A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act.'" *Simpson v. State*, 915 N.E.2d 511, 514 (Ind. Ct. App. 2009) (quoting *Hobson v. State*, 795 N.E.2d 1118, 1121 (Ind. Ct. App. 2003)). To prevail on a claim of self-defense or defense of a third person, the

defendant must show that he was in a place where he had a right to be; did not provoke, instigate, or participate willingly in the violence; and had a reasonable fear of death or great bodily harm. *See id.*

[12] When a claim of self-defense or defense of a third person is raised and finds support in the evidence, "the State has the burden of negating at least one of the necessary elements beyond a reasonable doubt." *Id.* The State may meet its burden by either rebutting the defense directly or by relying on the sufficiency of the evidence in its case-in-chief. *Id.* Whether the State has met its burden is a question for the trier of fact. *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999).

[13] We review a challenge to the sufficiency of the evidence to rebut such defenses using the same standard as for any claim of insufficient evidence. *Simpson*, 915 N.E.2d at 514. We "neither reweigh the evidence nor judge the credibility of the witnesses. If there is sufficient evidence of probative value to support the conclusion of the trier-of-fact, then the [judgment] will not be disturbed." *Id.* (citations omitted).

[14] In essence, Drye asserts that the jury verdicts are inconsistent. In particular, he maintains that, if he "acted in self-defense and has no criminal liability for murder or aggravated battery with Davis as the victim, then it becomes impossible that Drye was criminally reckless toward Davis." Appellant's Br. at 19. Still, Drye concedes that "purely inconsistent jury verdicts are not subject to remedy on appeal," and he clarifies that he alleges only insufficient evidence

to support his conviction. *Id.* at 20 (citing *Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010)).

[15] To prove criminal recklessness, as a Level 6 felony, the State was required to show that Drye, while armed with a deadly weapon, recklessly, knowingly, or intentionally performed an act that created a substantial risk of bodily injury to Davis. Ind. Code § 35-42-2-2 (2020). At trial, the State presented evidence that Drye used a gun to shoot Davis eight times. The evidence showed that Davis was unarmed and that Drye continued to shoot Davis as Davis ran from Drye and even after Davis had fallen to the ground. Drye's contention that he acted in self-defense is without merit. Whatever the jury's reasons for acquitting Drye on the other two charges, the State presented sufficient evidence to support Drye's conviction for criminal recklessness, as a Level 6 felony. *See Beattie*, 924 N.E.2d at 649.

[16] Affirmed.

Bradford, C.J., and Mathias, J., concur.