## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2020, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief for
Criminal Appeals

Anna Elcesser
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles Samuel Richardson, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | December 21, 2020 <br><br> Court of Appeals Case No. 20A-CR-1356 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Barbara Cook Crawford, Judge <br><br> Trial Court Cause No. 49G01-1905-F5-018069 |

**Najam, Judge.**

# Statement of the Case

Charles Samuel Richardson appeals his convictions for domestic battery, as a Level 5 felony; criminal confinement, as a Level 5 felony; strangulation, as a Level 5 felony; and interference with the reporting of a crime, a Class A misdemeanor. Richardson raises one issue for our review, namely, whether the State presented sufficient evidence to support his convictions.

We affirm.

# Facts and Procedural History

In March 2019, Richardson began dating Simone Rahier. At that time, Richardson lived in a ResCare house with his roommate Derick Benjamin.[1] Shortly after they began dating, Rahier moved into the house with Richardson. Then, in April, Rahier and Richardson learned that Rahier was pregnant.

On May 5, Rahier was at home with Richardson, Benjamin, and one ResCare worker. That evening, Richardson went through Rahier's cell phone and learned that Benjamin had contacted Rahier via Facebook. Richardson went to Benjamin "with a lot of rage," and the two "had a bit of an argument." Tr. at 13. After that argument subsided, Benjamin went to his bedroom, and Richardson and Rahier went to theirs. Rahier "verbalized" to Richardson that she was "a little bit upset" that he had looked through her phone. *Id*. At that

---

[1] Benjamin described ResCare as a program that provides housing for "[p]eople with disabilities." Tr. at 50. The facilities have staff members who provide supervision to the residents. *See id*. at 52.

point, Richardson "snatched" the phone from Rahier's hand and would not return it. *Id.*

[5] Rahier then left the room and went to the ResCare worker to ask to use that person's phone. However, Richardson told the worker not to let Rahier use the phone. Rahier then asked Benjamin if she could use his phone to get a ride out of the house, but Richardson threatened Benjamin "pretty violently" if he let Rahier use the phone, so Benjamin did not give his phone to Rahier. *Id.* at 15. At that point, Rahier became "uncomfortable" and wanted to leave the house. *Id.* Rahier started to pack her bags to leave, and "that's when things began to get violent." *Id.*

[6] As Rahier attempted to pack her bags, Richardson "slapp[ed]" and "push[ed]" her. *Id.* Rahier kept packing, but Richardson took her belongings out of her bags and threw them on the floor. Richardson then got "more and more violent." *Id.* at 16. As a result, Rahier went outside to again ask the ResCare worker to borrow a phone. Richardson followed Rahier outside and "made threats so that [she] couldn't use anybody's phone." *Id.*

[7] Rahier returned to the house, and the violence "became a little bit more intense," and he started "beating" her. *Id.* at 19. Throughout the night, Richardson "slapped," "pushed", "threatened", and "harassed" Rahier. *Id.* at 21. "Several times" throughout the night, Rahier attempted to leave, but Richardson "blocked" the door and would not let her exit. *Id.* at 19. Rahier was "sick of" being beaten, so she decided to go to bed and leave the next

morning while Richardson was at work. *Id*. at 20. Once she was in bed, Richardson returned the phone to Rahier, and Rahier texted her grandmother for help. Richardson then "snatched" the phone back, saw the message to Rahier's grandmother, and sent another message to Rahier's grandmother saying that things were fine. *Id*. at 21.

[8] Richardson then began to hit Rahier with a "closed fist." *Id*. at 22. Rahier left the bedroom and went to the living room to look for the ResCare worker. The worker was gone, so Rahier asked Benjamin for help. Richardson "threatened" Benjamin "pretty violently," so Benjamin did not help Rahier. *Id*. Richardson then hit Rahier in the head with a closed fist "[t]oo many [times] to remember." *Id*.

[9] After a "long time" of getting hit in the living room, Rahier tried to walk away. *Id*. at 23. Richardson followed her and punched her in the stomach two or three times. Rahier then attempted "multiple times" to use the fax machine to call 9-1-1. *Id*. at 24. But "every time" Rahier would dial, Richardson would "wait for it to ring" then push the "end button." *Id*. It was "like a game" to Richardson. *Id*. Richardson then threw Rahier to the ground and continued to punch her.

[10] At some point, Richardson walked away "for a second," and Rahier went to the kitchen to get a knife. *Id*. at 24. When Richardson returned, she asked him to stop hitting her. But Richardson hit her again, so she "stabbed" him in the shoulder. *Id*. at 25. Richardson then told Benjamin to call 9-1-1, and Benjamin

complied. After Benjamin called 9-1-1, "the worst few minutes of the beating" occurred. *Id.* at 27. Richardson pushed Rahier to the floor and began "wailing" on her head with a closed fist. *Id.* Richardson also put his hands around Rahier's neck and "squeez[ed] hard." *Id.* at 38. Rahier told Richardson that she could not breathe, but Richardson responded that he "d[idn't] care." *Id.* at 31. When the police arrived, Richardson walked away, and Rahier ran outside.

[11] The State charged Richardson with domestic battery, as a Level 5 felony (Count 1); battery, as a Level 5 felony (Count 2); criminal confinement, as a Level 5 felony (Count 3); strangulation, as a Level 5 felony (Count 4); domestic battery, as a Class A misdemeanor (Count 5); battery, as a Class A misdemeanor (Count 6); intimidation, as a Level 6 felony (Count 7); and interference with the reporting of a crime, a Class A misdemeanor (Count 8).

[12] During the ensuing bench trial, Rahier testified about the events that had occurred. In addition, Benjamin testified that, on that night, he had heard "[f]ighting" between Rahier and Richardson. *Id.* at 53. He also testified that neither he nor the ResCare worker had allowed Rahier to use their phones that night because Richardson had told them not to. Richardson then testified that Rahier had instigated the fight and that he had acted in self-defense. At the conclusion of the trial, the court entered judgment of conviction against

Richardson on Counts 1, 3, 4, and 8.[2]  The court then sentenced Richardson to an aggregate term of four years in the Department of Correction.  This appeal ensued.

# Discussion and Decision

[13]  Richardson asserts that the State presented insufficient evidence to support his convictions.  Our standard of review on a claim of insufficient evidence is well settled:

> For a sufficiency of the evidence claim, we look only at the probative evidence and reasonable inferences supporting the verdict.  *Drane v. State*, 687 N.E.2d 144, 146 (Ind. 2007).  We do not assess the credibility of witnesses or reweigh the evidence. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.  *Id*.

*Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017).

## *Self-Defense*

[14]  On appeal, Richardson first asserts that the State failed to present sufficient evidence to rebut his claims of self-defense as they relate to his convictions for domestic battery, as a Level 5 felony, and strangulation, as a Level 5 felony. "'A valid claim of defense of oneself or another person is legal justification for

---

[2]  The court found Richardson guilty of Counts 2, 5, and 6 but did not enter a judgment of conviction due to double jeopardy concerns.  The court found him not guilty of Count 7.

an otherwise criminal act.'" *Simpson v. State*, 915 N.E.2d 511, 514 (Ind. Ct. App. 2009) (quoting *Hobson v. State*, 795 N.E.2d 1118, 1121 (Ind. Ct. App. 2003)). To prevail on a claim of self-defense, the defendant must show that he was in a place where he had a right to be; did not provoke, instigate, or participate willingly in the violence; and had a reasonable fear of death or great bodily harm. *See id*.

[15] When a claim of self-defense is raised and finds support in the evidence, "the State has the burden of negating at least one of the necessary elements beyond a reasonable doubt." *Id*. The State may meet its burden by either rebutting the defense directly or by relying on the sufficiency of the evidence in its case-in-chief. *Id*. Whether the State has met its burden is a question for the trier of fact. *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999). We review a challenge to the sufficiency of the evidence to rebut such defenses using the same standard as for any claim of insufficient evidence. *Simpson*, 915 N.E.2d at 514.

[16] Here, Richardson asserts that he was legally justified in fighting Rahier because he "was in his own home where he had a right to be and[,] from his own testimony, was not the initial aggressor[.]" Appellant's Br. at 15. He further contends that, while Rahier claimed in her testimony that she was the victim, her version of events "is fraught with inconsistencies and contradictory descriptions of the entire scenario." *Id*. However, Richardson's argument is simply a request for this Court to reweigh the evidence and judge the credibility of witnesses, which we cannot do. The evidence most favorable to the trial court's judgment demonstrates that Richardson initiated the altercation, choked

Rahier and repeatedly hit her in the head and stomach, and continued fighting her even as she attempted to walk away. That evidence is sufficient to show that Richardson provoked, instigated, and willingly participated in the fight. Accordingly, the State presented sufficient evidence to rebut Richardson's claims of self-defense. We affirm Richardson's convictions for domestic battery, as a Level 5 felony, and strangulation, as a Level 5 felony.

### *Criminal Confinement*

[17]    Richardson next contends that the State presented insufficient evidence to support his conviction for criminal confinement. To convict Richardson of criminal confinement, as a Level 5 felony, the State was required to prove that he had knowingly or intentionally confined Rahier without her consent and that the confinement resulted in bodily injury to Rahier. *See* Ind. Code § 35-42-3-3(b)(1) (2020). On appeal, Richardson maintains that the State presented insufficient evidence to support that conviction because Rahier's testimony that she was confined contains numerous "inconsistencies." Appellant's Br. at 17. In addition, he asserts that he did not confine Rahier because Rahier twice left the house on the night of the offense—once to speak to the ResCare worker outside and once when the officers arrived. Accordingly, he maintains that Rahier "could leave and, in fact, did leave the house" such that she was not confined. *Id.*

[18]    Richardson's arguments on appeal are again an improper request that we reweigh the evidence and judge the credibility of the witnesses. The evidence most favorable to the judgment demonstrates that Rahier attempted to leave the

house "[s]everal times" throughout the night, but that Richardson repeatedly "blocked" the door. Tr. at 19. And the evidence demonstrates that Rahier sustained several injuries while confined. As such, the State presented sufficient evidence to demonstrate that Richardson confined Rahier without her consent. We affirm his conviction for criminal confinement, as a Level 5 felony.

### Interference with the Reporting of a Crime

[19] Finally, Richardson contends that the State presented insufficient evidence to support his conviction on Count 8. To prove that Richardson interfered with the reporting of a crime, the State was required to show that Richardson, with the intent to commit, conceal, or aid in the commission of a crime, knowingly or intentionally interfered with or prevented Rahier from using a 9-1-1 emergency telephone system. *See* I.C. § 35-45-2-5(1).

[20] Richardson acknowledges that he hung up the fax machine when Rahier attempted to call 9-1-1. But he contends that the State failed to present sufficient evidence to support his conviction because, "[a]ccording to [him]," the fax machine that Rahier used to attempt to call 9-1-1 can only send faxes. Appellant's Br. at 18. But, yet again, his argument on appeal is an improper request for us to give more weight to his testimony than to Rahier's. The evidence most favorable to the trial court's judgment demonstrates that Richardson took Rahier's phone from her and prohibited Rahier from using either the ResCare worker's or Benjamin's phones such that she was unable to use a phone to call for help. And Rahier testified that she tried "multiple times" to use the fax machine to call 9-1-1 but that, "every time," Richardson would

wait for it to ring and "hit the end button[.]" Tr. at 23-24. That evidence supports a reasonable inference that Richardson interfered with or prevented Rahier from calling 9-1-1. The State presented sufficient evidence to support his conviction for interference with the reporting of a crime.

[21] In sum, we affirm Richardson's convictions.

[22] Affirmed.

Riley, J., and Crone, J., concur.