## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 30 2015, 8:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

Michael C. Borschel
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Keith Wolfe,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 30, 2015<br><br>Court of Appeals Case No.<br>49A02-1504-CR-226<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Kurt Eisgruber, Judge<br><br>Trial Court Cause No.<br>49G01-1401-FB-3334 |

**Kirsch, Judge.**

Keith Wolfe was convicted after a jury trial of operating a vehicle causing death with a controlled substance or its metabolite in the body[1] as a Class B felony, possession of cocaine or a narcotic drug[2] as a Class D felony, and possession of marijuana[3] as a Class A misdemeanor and was sentenced to an aggregate ten-year sentence. He appeals and raises the following restated issues for our review:

> I. Whether the trial court abused its discretion when it refused Wolfe's tendered jury instruction on the presumption of innocence;

> II. Whether the trial court abused its discretion when it instructed the jury as to the causation element of the operating a vehicle causing death with a controlled substance or its metabolite in the body statute; and

> III. Whether sufficient evidence was presented to support Wolfe's conviction for operating a vehicle causing death with a controlled substance or its metabolite in the body.

We affirm.

---

[1] *See* Ind. Code § 9-30-5-5(b)(2). We note that, effective July 1, 2014, a new version of these criminal statutes was enacted. Because Wolfe committed his crimes prior to July 1, 2014, we will apply the statutes in effect at the time he committed his crimes.

[2] *See* Ind. Code § 35-48-4-6(a).

[3] *See* Ind. Code § 35-48-4-11.

# Facts and Procedural History

[3] On October 2, 2012 at approximately 2:00 p.m., Maurice Barr was driving an empty school bus on his way to pick up students when he exited Interstate 70 West and proceeded to the bottom of the exit ramp where he planned to turn left onto Rural Street. Barr made a complete stop at the red light at the bottom of the ramp and waited for the light to turn green. When the light turned to green, Barr accelerated and entered into the intersection to make a left turn. As Barr was about halfway through his left turn, Wolfe, driving a black Ford Taurus with Everett McNeal in the front passenger seat, failed to stop at the cross-street's red light and crashed the Taurus into the middle of the school bus. At the time of impact, Wolfe was traveling fifty-one miles per hour in a thirty-five miles-per-hour zone and made no attempt to stop before hitting the bus. The force of the impact caused the Taurus to be wedged underneath the bus, which cause both Wolfe and McNeal to be trapped inside the Taurus.

[4] Multiple calls were made to 911 reporting the accident, and police and emergency medical personnel arrived at the scene of the accident and extricated the occupants of the Taurus from the vehicle. Both Wolfe and McNeal were transported to the hospital. Indianapolis Metropolitan Police Department Officer Matthew Earley followed the ambulance transporting Wolfe. At the hospital, police attempted to identify Wolfe by searching his pockets for identification. Although no identification was found, Officer Earley did find marijuana and a hydrocodone pill in Wolfe's pants pockets. Other officers searched the Taurus at the scene of the accident and found marijuana on the

driver's seat, as well as "cigarellos," which are frequently emptied and rolled-up with marijuana inside to smoke. *Tr.* at 114. Wolfe's blood was drawn shortly after the accident pursuant to a search warrant, and a toxicological analysis determined that Wolfe had both active and inactive amounts of THC in his blood. Wolfe recovered from his injuries sustained in the accident, but McNeal died from his injuries on November 6, 2012.

[5] On January 22, 2014, the State charged Wolfe with operating a vehicle causing death with a controlled substance or its metabolite in the body as a Class B felony, possession of cocaine or a narcotic drug as a Class D felony, and possession of marijuana as a Class A misdemeanor. During the jury trial, Wolfe tendered the following jury instruction concerning the application of the presumption of innocence when faced with conflicts in the evidence:

> If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the Accused, and the other to his/her innocence, it is your duty, under the law, to adopt that interpretation which is consistent with the Accused's innocence, and reject that which points to his/her guilt.

*Appellant's App*. at 154. The trial court refused to give the instruction because it was covered by the court's existing instruction.

[6] The State tendered the following proposed jury instruction on the definition of causation, which was an element of the charge of operating a vehicle causing death with a controlled substance or its metabolite in the body:

In order to prove the defendant caused the death of another person, the State is required to prove that the defendant's operation of a motor vehicle was a "substantial cause" of the resulting death, not merely a "contributing cause."

*Id.* at 163. Wolfe objected to this instruction, arguing that the term "substantial cause" could cause the jury to shift the burden of proof from the State to him. *Tr.* at 316. The trial court overruled Wolfe's objection and included the proposed instruction in the final jury instructions.

[7] At the conclusion of the trial, the jury found Wolfe guilty of all three charged offenses. At sentencing, the trial court imposed an aggregate ten-year executed sentence. Wolfe now appeals.

# Discussion and Decision

## I. Denial of Jury Instruction

[8] Wolfe argues that the trial court abused its discretion when it refused his tendered jury instruction on the presumption of innocence, particularly as it applies to conflicting evidence. He contends that the proposed instruction was a correct statement of the law and that the evidence presented at trial supported giving the instruction as there was testimony from a witness that contradicted other witnesses' statements that Wolfe ran the red light. Wolfe also claims that the substance of his tendered instruction, particularly as it applies to conflicting evidence, was not covered by the other instructions given to the jury.

[9] Instructing the jury lies within the sole discretion of the trial court. *Eberle v. State*, 942 N.E.2d 848, 861 (Ind. Ct. App. 2011), *trans. denied*. We review a trial court's decision to give or refuse to give an instruction for an abuse of discretion. *Williams v. State,* 891 N.E.2d 621, 630 (Ind. Ct. App. 2008). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Eberle*, 942 N.E.2d at 861. In determining whether a trial court abused its discretion by declining to give a tendered instruction, we consider (1) whether the tendered instruction correctly states the law, (2) whether there was evidence presented at trial to support giving the instruction, and (3) whether the substance of the instruction was covered by other instructions that were given. *Fry v. State*, 25 N.E.3d 237, 249 (Ind. Ct. App. 2015), *trans. denied*.

[10] Here, Wolfe tendered the following proposed instruction to the trial court, which the trial court refused:

> If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the Accused, and the other to his/her innocence, it is your duty, under the law, to adopt that interpretation which is consistent with the Accused's innocence, and reject that which points to his/her guilt.

*Appellant's App*. at 154. In *Simpson v. State*, 915 N.E.2d 511 (Ind. Ct. App. 2009), *trans. denied*, the defendant tendered an almost identical instruction, which was refused by the trial court. *Id*. at 518. A panel of this court affirmed the trial court's refusal to give the instruction, holding that the instruction was

an incomplete statement of the previously-approved instruction in *Robey v. State*, 454 N.E.2d 1221 (Ind. 1983). *Simpson*, 915 N.E.2d at 520. In *Simpson*, this court agreed with the State that the defendant's tendered instruction was incomplete because it failed to inform the jury that it could in fact conclude that one of the two opposing conclusions was unreasonable. *Id.* Given that Wolfe tendered an instruction that was almost identical to the one found to be properly refused in *Simpson* because it was an incomplete and incorrect statement of the law, we conclude that the trial court did not abuse its discretion in refusing his proposed instruction. *See Duren v. State*, 720 N.E.2d 1198, 1205 (Ind. Ct. App. 1999) ("When an instruction does not fully and accurately state the law and thus, tends to mislead or confuse the jury, the instruction is properly rejected."), *trans. denied*.

[11] Further, the substance of Wolfe's proposed instruction was covered by other instructions given by the trial court. Instruction 15 informed the jury that if there was a conflict in the evidence, the jury "should reconcile the evidence on the theory that the defendant is innocent if you can do so." *Appellant's App.* at 146. Instruction 7 discussed the presumption of innocence and instructed the jury that "a person charged with a crime is presumed to be innocent" and to "overcome the presumption of innocence, the State must prove [Wolfe] guilty of each element of the crime charged, beyond a reasonable doubt." *Id.* at 138. Wolfe's proposed instruction essentially set forth that conflicts in the evidence should be resolved in favor of the presumption of innocence. We find that other instructions given to the jury instructed it as to the substance contained in

Wolfe's proposed instruction. The trial court did not abuse its discretion in refusing to give the instruction.

[12]  Additionally, Wolfe argues that, in light of our Supreme Court's opinion in *McCowan v. State*, 27 N.E.3d 760 (Ind. 2015), the trial court erred in instructing the jury. We disagree. First, *McCowan* was decided after Wolfe's trial had concluded. Given that ambiguity existed in the law concerning the presumption of innocence and the exact concepts to be included in jury instructions at the time of Wolfe's trial, a trial court cannot be expected to anticipate future Supreme Court holdings to shape its jury instructions. *Id*. at 767. Second, the proposed jury instruction that Wolfe tendered to the trial court did not reflect the holding in *McCowan*, which held that every criminal defendant is entitled to the following jury instruction upon request: "The presumption of innocence continues in favor of the defendant throughout the trial. You should fit the evidence to the presumption that the defendant is innocent if you can reasonably do so." *Id*. at 762. Wolfe did not propose such language or request such an instruction and cannot, therefore, assert that the trial court's non-compliance with *McCowan* was error. Lastly, the instructions given in the present case were practically identical to the instructions given under the facts of *McCowan*, which the Supreme Court upheld as being consistent with the then-existing standard enunciated in *Robey*. *Id*. at 767. The trial court did not abuse its discretion in refusing to give Wolfe's proposed instruction.

## II. Jury Instruction on Causation

[13] Wolfe contends that the trial court abused its discretion in instructing the jury as to causation when it overruled his objection to the State's tendered jury instruction. He asserts that the State's tendered instruction was misleading and confusing because it allowed the jury to find that his actions substantially caused the accident that resulted in McNeal's death "at a standard less than needed to establish proximate cause beyond a reasonable doubt." *Appellant's Br.* at 17. Wolfe argues that the trial court erred in allowing the State's instruction because it failed to inform the jury that proximate cause was the standard by which his conduct needed to be evaluated and failed to define proximate cause or how the term "substantial cause" incorporates the "principles of proximate cause." *Id.* at 19.

[14] The trial court has broad discretion regarding the manner by which it instructs the jury, and we generally review that discretion only for abuse. *McCowan*, 27 N.E.3d at 763. In doing so, "we consider the instructions 'as a whole and in reference to each other' and do not reverse the trial court 'for an abuse of that discretion unless the instructions as a whole mislead the jury as to the law in the case.'" *Helsley v. State,* 809 N.E.2d 292, 303 (Ind. 2004) (quoting *Carter v. State,* 766 N.E.2d 377, 382 (Ind. 2002)).

[15] In the present case, the State tendered the following proposed jury instruction on the definition of causation:

> In order to prove the defendant caused the death of another person, the State is required to prove that the defendant's operation of a motor vehicle was a "substantial cause" of the resulting death, not merely a "contributing cause."

*Id.* at 163. Wolfe objected, arguing that the term "substantial cause" could cause the jury to shift the burden of proof from the State to him. *Tr.* at 316. The trial court overruled Wolfe's objection, and the instruction was included in the final jury instructions.

[16] The causation instruction given by the trial court was a correct statement of the law. In many previous cases, the exact language of the instruction given by the trial court has been upheld as properly explaining the required proof that the defendant's operation of a motor vehicle was the substantial cause of the resulting death and not merely a contributing cause. *Abney v. State*, 766 N.E.2d 1175, 1177 (Ind. 2002); *Rowe v. State*, 867 N.E.2d 262, 268 (Ind. Ct. App. 2007); *Radick v. State*, 863 N.E.2d 356, 358 (Ind. Ct. App. 2007). Although Wolfe is correct in his assertion that it is a "well-settled rule" that the evidence must show that the defendant's conduct was a "proximate cause of the victim's injury or death," our Supreme Court in *Abney* approved the approach that the State must prove the defendant's operation of a motor vehicle was the "substantial cause" of the resulting death and not merely a contributing cause. *Abney*. 766 N.E.2d at 1177-78. Therefore, the use of substantial cause as the level of causation required to be proven by the State has been upheld by both the Supreme Court and this court, and the instruction given by the trial court was a correct statement of the law.

Wolfe's argument that the term substantial cause was not clear or precise enough and, thus, allowed the jury to use its own definition of the term that may not have met the standard of reasonable doubt lacks merit. First, his contention ignores that numerous instructions informing the jury that every element of the crime, including causation, must be proven beyond a reasonable doubt. *See Appellant's App*. 138-41, 145. Second, the instruction did not leave the jury with a complete lack of guidance as to the meaning of substantial cause; it instructed the jury that a substantial cause was not merely a contributing cause. Lastly, his argument mistakes a perceived ambiguity in the definition of substantial cause with a lessening of the State's burden of proof. No one at trial alleged that the State's burden of proof was less than beyond a reasonable doubt, and Wolfe has not presented any authority to support his contention. The trial court did not abuse its discretion in giving the State's proposed instruction on causation.

## III. Sufficient Evidence

The deferential standard of review for sufficiency claims is well settled. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Cunningham v. State*, 870 N.E.2d 552, 553 (Ind. Ct. App. 2007). We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*. We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. *Id*. We will affirm unless no

reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Tooley v. State*, 911 N.E.2d 721, 724-25 (Ind. Ct. App. 2009), *trans. denied*. As the reviewing court, we respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

[19] Wolfe argues that insufficient probative evidence was presented to support his conviction for operating a vehicle causing death with a controlled substance or its metabolite in the body. Specifically, he contends that the evidence was open to two reasonable interpretations as to whether he was "speeding and/or ran a red light" that resulted in the Taurus crashing into the school bus. *Appellant's Br.* at 20. Wolfe, therefore, claims that the element of causation, whether he operated the vehicle in such a manner that substantially caused McNeal's death, was not proven beyond a reasonable doubt.

[20] In order to convict Wolfe, the State was required to prove beyond a reasonable doubt that he, while being at least twenty-one years of age, caused the death of McNeal when operating a vehicle with a controlled substance or its metabolite in his blood, in this case THC. Ind. Code § 9-30-5-5(b)(2); *Appellant's App.* at 21. Wolfe's contention focuses on the causation element of the crime. Although the State is required to prove that Wolfe's conduct was the proximate cause of McNeal's death, the conduct to be looked at in the analysis is "the driver's act of operating the vehicle, not the particular manner in which the driver operates the vehicle." *Rowe*, 867 N.E.2d at 268 (citing *Spaulding v. State*, 815 N.E.2d 1039, 1042 (Ind. Ct. App. 2004)).

[21] In the present case, considering the evidence most favorable to the verdict as we are required to do, the evidence presented showed that, at the time of the accident, Wolfe was driving his vehicle with McNeal as a passenger. As he approached the intersection, Wolfe was driving fifty-one miles per hour in a thirty-five miles-per-hour zone and instead of slowing down as he approached the red light, the evidence showed that he did not display any brake lights, and there were no skid marks at the scene. *Tr.* at 67, 229. Two 911 callers, an eyewitness at the accident scene, and the bus driver, Barr, all testified that Wolfe ran the red light; additionally, an expert witness testified that Wolfe was at fault for the accident. *Id.* 48-49, 64, 234; *State's Ex.* 7. We, therefore, conclude that sufficient evidence was presented to support Wolfe's conviction for operating a vehicle causing death with a controlled substance or its metabolite in the body as a Class B felony. Wolfe's assertion that there was insufficient evidence presented to support his conviction because his witnesses testified that the light was green when Wolfe went through the intersection is merely an invitation to reweigh the evidence, which we cannot do. *Cunningham*, 870 N.E.2d at 553.

[22] Affirmed.

Najam, J., and Barnes, J., concur.