# FOR PUBLICATION



FILED
Dec 20 2013, 6:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN JACOB WARRUM**
Mt. Vernon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

STEPHEN BRAKIE,                    )
                                   )
    Appellant-Defendant,           )
                                   )
    vs.                            )     No. 65A05-1304-CR-172
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.            )

APPEAL FROM THE POSEY CIRCUIT COURT
The Honorable James M. Redwine, Judge
Cause No. 65C01-1111-FA-592

**December 20, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Stephen Brakie appeals his conviction for child molesting as a class A felony, raising three issues which we consolidate and restate as:

I.      Whether the trial court abused its discretion by rejecting Brakie's proposed instruction regarding the presumption of innocence; and

II.     Whether the evidence is sufficient to sustain his conviction for child molesting as a class A felony.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2011, James Johnson, Jr., and Laura Martin were engaged to be married and lived with Johnson's three daughters including four-year-old N.J., who was born on November 29, 2006. At some point, Johnson told Martin that the last time Brakie, a friend of the family, was at their house something had come up missing, and he believed Brakie "maybe . . . took it," and Martin should watch Brakie. Transcript at 141.

On October 30, 2011, Brakie went over to Johnson's house at around 5:30 p.m. Martin was looking through boxes in the bedroom she shares with Johnson, and Johnson was cleaning out the van outside by the side of the house. N.J. was with Brakie, and Johnson's two other daughters were outside playing on the swing set in the back yard. At some point, Brakie asked Martin if he could have their puppy, and Martin said that he would have to ask Johnson.

At some point, Brakie went into Martin's bedroom, and Martin told him that he should "go out there with James" because she was busy. Id. Brakie picked up N.J., put her over his shoulder, and said, "Let's go outside and play . . . ." Id. at 142.

2

Instead of going outside with N.J.'s other sisters, Brakie and N.J. went to the back room, and Brakie pushed N.J. down and removed her tights. Brakie put a screwdriver in her "privacy" or crotch area of her body and this hurt N.J. "[a] lot." Id. at 207. N.J. was scared, and Brakie told her that if she told anybody that he would give her a "butt whipping." Id. at 208. Brakie was with N.J. for between five and twenty-five minutes.

Martin continued unpacking the boxes and cleaning until Johnson's two other daughters came to her and said that N.J.'s "privacy was bleeding."[1] Id. at 142. Martin examined N.J.'s private area and discovered that N.J.'s "privacy's [sic] was really bloody, there was quite a lot of blood . . . and . . . the hole of her privacy was abnormally large." Id. at 143. There was blood "all over her vagina" and "coming down her legs." Id. at 173. Martin thought that it looked like "something had penetrated into her vagina." Id. at 143. N.J. said that it hurt "really bad." Id.

Meanwhile, Johnson, who was still cleaning out his van, saw Brakie leave and walk back down an alley. Martin came outside and was "kind of hysterical" and told Johnson that he needed to come inside and check on N.J. Id. at 172. When Martin first asked N.J. what happened, N.J. stated that she fell on a tool. Martin said, "Did something else happen to you . . . [y]ou can tell me the truth, you don't have to be scared," and N.J., who seemed rather nervous, said "Yeah" and told Martin that Brakie hurt her. Id. at 144.

---

[1] During cross-examination of Martin, the following exchange occurred:

[Defense Counsel]: And I believe you referred to it as her hole.

Laura Martin: Her privacy, hole, yes, the vagina entry where you usually have sexual relations, yes.

Transcript at 153.

3

Martin and Johnson then asked N.J. what had happened, and N.J. said that Brakie "had stuck something up her privacy," which she sometime later described as a green screwdriver, which was a screwdriver of a color that Johnson had at one time, and N.J. indicated that Brakie had taken the green screwdriver with him when he left. Id. at 143. N.J. also stated that Brakie had inserted a grinder handle[2] and a nail into her, and that Brakie had said if she told on him he would "whoop her butt." Id. at 143. Martin then called the police.

Sometime that evening, Kathalene Keller, a sexual assault nurse examiner and an emergency room nurse, examined N.J. and observed that she had no bruising or trauma to her external genitalia but had a very large tear that was still actively bleeding to the posterior fourchette which "almost extend[ed] into her rectum" and an abrasion next to her hymen. Id. at 284. Keller also observed a lot of redness on N.J.'s internal genitalia. N.J. was "very adamant" that the examination was "very painful" and was "very tearful throughout the entire examination," so that Keller had to take a lot of breaks. Id. at 286-287. Keller did not ask N.J. any specific questions, but N.J. told Keller that Brakie used a screwdriver.

On November 1, 2011, Jenny Wood, a child forensic interviewer and an employee of Holly's House, a child and adult advocacy center located in Evansville, interviewed N.J. N.J. initially told Wood that she fell, that Brakie pushed her, she fell to the ground and was hurt, and that Brakie pulled down her tights. She told Wood that Brakie "made her privacy bleed . . . by tools." Id. at 219. Wood showed N.J. an anatomically correct

---

[2] Johnson testified that he did not have a grinder but had a grinder handle.

drawing of a girl and asked her where she was hurt, and N.J. circled the vagina area. N.J. described a green screwdriver and a tool "that was gray with pink on it" and brown. Id. at 237. N.J. also mentioned that Brakie inserted a lot of things into her.

On December 2, 2011, the State filed an amended information charging Brakie with child molesting as a class A felony. At trial, N.J. testified that Brakie put a screwdriver in her "privacy," which she indicated was the crotch area of her body, and that it hurt a lot. Id. at 207. When asked how an injury such as N.J.'s would occur, Keller answered that "to cause a tear to the posterior fourchette there would have to [be] pressure or blunt force trauma applied to the internal genitalia, the female sex organ." Id. at 282. Keller also testified that N.J.'s injuries were not consistent with a straddle fall, explaining that:

> If [N.J.] would have had a straddle fall, or fell on anything, the whole purpose of the labia majora on a female is actually to protect the internal sex organ. If she would have fell onto something, she would have had trauma to the inner thigh, and she also would have had trauma noted to the labia majora, and she had none of that.

Id. at 285. Keller also testified that N.J.'s injuries were consistent with a tool being used and with someone trying to push an object into her vagina, and that "That would be the only way that you could actually get tearing to the posterior fourchette is when an object is attempted to placed [sic] into the hymen, which is actually the entrance to the vaginal canal." Id. at 286.

On December 12, 2012, Brakie tendered a final instruction regarding the presumption of innocence. The court refused to give the instruction and stated:

> [Defense counsel] offered one (1) proposed final instruction, the Court asked for authority as to whether that was an approved instruction.

5

[Defense counsel] attempted to find such authority, but was, has not been able to do so. The Court is going to refuse the instruction as not being supported with authority, and the Court finds it's also not a correct statement of the law.

Id. at 359. Defense counsel argued that the proposed instruction had been used in multiple courts and was appropriate to give in this case. The court responded by stating:

I believe that every[ ]one of the points included in the instruction you proposed are included in the Court's definitions and there are two (2) definitions from the Court on reasonable doubt. Court's number 11 and Court's number 12, and so I think that Mr. Brakie's position is well covered by the Court's instructions.

Id. at 361.[3]

The jury found Brakie guilty as charged. The court sentenced Brakie to serve thirty years in the Department of Correction.

DISCUSSION

I.

The first issue is whether the trial court abused its discretion by rejecting Brakie's proposed instruction regarding the presumption of innocence. Generally, "[t]he purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Overstreet v. State, 783 N.E.2d 1140, 1163 (Ind. 2003), cert. denied, 540 U.S. 1150, 124 S. Ct. 1145 (2004). Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion. Id. at 1163-1164. When reviewing the refusal to give a proposed instruction, this court

---

[3] The trial court referred to these instructions as "Court's number 11 and Court's number 12." Transcript at 361. The record does not contain a copy of the individual instructions but contains a recitation of the instructions to the jury in the transcript which does not include a delineation of separate instructions.

6

considers: (1) whether the proposed instruction correctly states the law; (2) whether the evidence supports giving the instruction; and (3) whether other instructions already given cover the substance of the proposed instruction. Driver v. State, 760 N.E.2d 611, 612 (Ind. 2002). Generally, to constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. Benefiel v. State, 716 N.E.2d 906, 914 (Ind. 1999), reh'g denied, cert. denied, 531 U.S. 830, 121 S. Ct. 83 (2000).

An error is to be disregarded as harmless unless it affects the substantial rights of a party. Oatts v. State, 899 N.E.2d 714, 727 (Ind. Ct. App. 2009); Ind. Trial Rule 61. "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." Dill v. State, 741 N.E.2d 1230, 1233 (Ind. 2001).

Brakie tendered the following jury instruction:

> If the evidence in this case susceptible [sic] to two different interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under law, to adopt that interpretation which will establish the defendant's innocence, and reject that which points to his guilt.
>
> You will notice, however, that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to the defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilty.

Appellant's Appendix at 21.

7

Brakie cites Robey v. State, 454 N.E.2d 1221 (Ind. 1983); Lee v. State, 964 N.E.2d 859 (Ind. Ct. App. 2012), trans. denied; and Matheny v. State, 983 N.E.2d 672 (Ind. Ct. App. 2013), clarified on reh'g, 987 N.E.2d 1169, trans. denied, for the proposition that the trial court abused its discretion in refusing his tendered instruction.

At trial, the court issued certain relevant instructions, instructing the jury as part of the preliminary instructions and the final instructions that "[u]nder the law of this State a person charged with a crime is presumed to be innocent" and that "[y]ou should attempt to fit the evidence to the presumption that Stephen J. Brakie is innocent . . . ." Transcript at 101. The court also informed the jury of the State's burden as follows:

> To overcome the presumption of innocence the State must have proved Stephen J. Brakie guilty of each element of the crime charged, beyond a reasonable doubt. Mr. Brakie is not required to present any evidence to prove or explain anything. . . . The burden is upon the State to prove beyond a reasonable doubt that Stephen J. Brakie is guilty of the crime charged. It is a strict and heavy burden. The evidence must overcome any reasonable doubt concerning Mr. Brakie's guilt. But it does not mean that Mr. Brakie's guilt must be proved beyond all possible doubt. A reasonable doubt is a fair, actual, and logical doubt based upon reason and common sense. A reasonable doubt may arise either from the evidence or from a lack of evidence. Reasonable doubt exist [sic] when you are not firmly convinced of Mr. Brakie's guilt, after you have weighted [sic] and considered all of the evidence. Mr. Brakie must not be convicted on suspicion or speculation. It is not enough for the State to show that Mr. Brakie is probably guilty. On the other hand there are very few things in this world that we know with absolute certainty. The State must prove each element of the crime by evidence that convinces each of you, and leaves no reasonable doubt. The proof must be so convincing that you can rely and act upon it in this matter of the highest importance. If you find that there is a reasonable doubt that Stephen J. Brakie is guilty of the crime, you must give Mr. Brakie the benefit of that doubt, and find Mr. Brakie not guilty of the crime under consideration. A reasonable doubt is a fair, actual, and logical doubt, that arises in your mind after an impartial consideration of all of the evidence and circumstances in the case. It should be a doubt based upon reason and common sense. And not a doubt based upon imagination, or speculation. To prove Stephen J. Brakie's guilt of the elements of the

8

crime charged, beyond a reasonable doubt the evidence must be such that it would convince you of the truth of it. To such a degree of certainty that you would feel safe to act upon such conviction without hesitation in a matter of the highest concern and importance to you.

Id. at 426-427.

In Robey, the defendant tendered a jury instruction stating:

The law presumes the defendant to be innocent of the crime charged, and this presumption continues in his favor throughout the trial of this cause. It is your duty, if it can be reasonably and conscientiously done to reconcile the evidence upon the theory that the defendant is innocent, and you cannot find the defendant guilty of the crime charged in the information unless the evidence satisfies you beyond a reasonable doubt of his guilt.

454 N.E.2d at 1222. The Court held that when such an instruction, "which advises the jury that the presumption of innocence prevails until the close of the trial, and that it is the duty of the jury to reconcile the evidence upon the theory of the defendant's innocence if they could do so, must be given if requested." Id. (citing Farley v. State, 129 Ind. 419, 26 N.E. 898 (1891); Simmons v. State, 179 Ind. App. 342, 385 N.E.2d 225 (1979)).

In Farley, upon which Robey principally relies, the Indiana Supreme Court noted that although the trial court "gave general instructions to the effect that the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt," the instructions did not address "the principle" put forward by the defendant's tendered instruction, namely, "that the presumption of innocence prevails throughout the trial, and that it was the duty of the jury to reconcile the evidence upon the theory of the defendant's innocence, if they could do so." 129 Ind. at 420-421, 26 N.E. at 899.

9

We observe that unlike the instruction tendered by the defendant in <u>Robey</u>, the instruction tendered by Brakie did not include the advisement that the presumption of innocence prevails until the close of the trial. Moreover, Brakie's counsel did not object to the instructions for the failure to include such an advisement. Thus, we focus on whether the trial court properly instructed the jury of the duty to reconcile the evidence upon the theory of the defendant's innocence if they could do so, which is the essence of Brakie's tendered instruction. <u>See</u> <u>Scisney v. State</u>, 701 N.E.2d 847, 849 (Ind. 1998) ("We hold that appellate review of a claim of error in the giving of a jury instruction requires a timely trial objection clearly identifying both the claimed objectionable matter and the grounds for the objection, but that the tender of a proposed alternative instruction is not necessarily required to preserve the claim of error.").

We find <u>Simpson v. State</u>, 915 N.E.2d 511 (Ind. Ct. App. 2009), <u>trans.</u> <u>denied</u>, instructive. In <u>Simpson</u>, the defendant tendered a similar final instruction to the one requested by Brakie, specifically the following:

> You should attempt to fit the evidence to the presumption that the Accused is innocent.
>
> If the evidence in this case is susceptible of two (2) constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the accused, and the other to his innocence, it is your duty, under the law, to adopt the interpretation which is consistent with the Accused's innocence, and reject that which points to his guilt.

915 N.E.2d at 518. The trial court refused the instruction and instructed the jury as follows:

> You are the exclusive judges of the evidence, the credibility of the witnesses, and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his

or her ability and opportunity to observe; the manner and conduct of the witness while testifying; any interest, bias, or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all of the evidence in the case.

You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony, you must determine which of the witnesses you will believe and which of them you will disbelieve.

In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience, and common sense gained from day-to-day living. The number of witnesses who testify to a particular fact or the quantity of evidence on a particular point need not control your determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

Id. at 518-519. On appeal, the defendant argued that while the court's instruction informed the jury to fit the evidence to the presumption of innocence, none of the court's instructions or combination of instructions informed the jury of their duty when the case is susceptible of two constructions or interpretations. Id. at 519. This court agreed with the State that the holding in Robey simply required an instruction that the jury should fit the evidence to the presumption that a defendant is innocent and concluded that the trial court did not abuse its discretion in refusing the defendant's instruction. Id. at 520.

Here, we find that the court's instructions adequately instructed the jury on the presumption of innocence. Specifically, the court instructed the jury that under the law of this State a person charged with a crime is presumed to be innocent and that "[y]ou should attempt to fit the evidence to the presumption that Stephen J. Brakie is innocent . . . ." Transcript at 101, 426. This instruction satisfied the Indiana Supreme Court's

11

holding in <u>Robey</u> that the jury should fit the evidence to the presumption that a defendant is innocent. <u>See</u> <u>Smith v. State</u>, 981 N.E.2d 1262, 1269 (Ind. Ct. App. 2013) (holding that an instruction that the jury "should attempt to fit the evidence to the presumption that the Defendant is innocent" satisfied the holding in <u>Robey</u> and concluding that the trial court did not abuse its discretion in refusing to use the defendant's tendered instruction because the substance of that instruction was covered by instructions given by the court), <u>trans.</u> <u>denied</u>; <u>Simpson</u>, 915 N.E.2d at 520; <u>Watson v. State</u>, 512 N.E.2d 885, 888 (Ind. Ct. App. 1987) (holding that the court did not err in refusing to give the defendant's tendered instruction which was based upon <u>Farley</u> because "the substance of the refused instruction was adequately covered"). We cannot say that the trial court abused its discretion in declining to give Brakie's tendered instruction or that reversal is warranted on this basis.

To the extent that Brakie cites <u>Matheny</u>, we do not find that reversal is required. Brakie appears to argue that the instruction in <u>Matheny</u> was incomplete as opposed to his complete instruction. The court in <u>Matheny</u> found that the defendant's tendered instruction was incomplete based upon <u>Simpson</u>. 983 N.E.2d at 680. However, as pointed out in <u>Matheny</u>, incompleteness was one of two reasons that the <u>Simpson</u> court affirmed the trial court's refusal of the tendered instruction. <u>Matheny</u>, 983 N.E.2d at 680 n.6. The <u>Simpson</u> court explained:

> The State contends that Simpson's tendered instruction was "incomplete because it failed to inform the jury that they could in fact conclude that one of the two opposing conclusions was unreasonable." Appellee's Br. at 11. The State further contends that "[o]ur Supreme Court's holding in <u>Robey</u> simply required an instruction that the jury should fit the evidence to the presumption that a defendant is innocent" and that the trial court's

12

> instruction "informed the jury as required by Robey." Id. We agree with the State and therefore conclude that the trial court did not abuse its discretion in refusing Simpson's instruction. Consequently, we affirm Simpson's convictions.

Simpson, 915 N.E.2d at 520. We cannot say that the fact that Brakie's tendered instruction was more complete than the instruction tendered by the defendant in Simpson requires reversal because we conclude that the trial court's instructions informed the jury of the duty to reconcile the evidence upon the theory of the defendant's innocence if they could do so, which was one of the court's bases for affirming in Simpson. We also observe that the instruction in Matheny indicated that the presumption of innocence continues in favor of the accused throughout the trial, 983 N.E.2d at 678, and, as clarified by the court on rehearing, the instructions that the trial court gave the jury did not adequately convey the substance of Matheny's tendered instructions. 987 N.E.2d at 1172. Unlike Matheny, the instruction tendered by Brakie did not include the advisement that the presumption of innocence prevails until the close of the trial, and, moreover, Brakie's counsel did not object to the instructions for the failure to include such an advisement.

With respect to Brakie's reliance on Lee v. State, 964 N.E.2d 859 (Ind. Ct. App. 2012), trans. denied, we find Lee distinguishable. In Lee, the defendant's tendered instruction was more extensive and included the idea that the presumption continues in favor of the accused throughout the trial. 964 N.E.2d at 863. Further, the trial court in Lee did not inform the jury that it "should attempt to fit the evidence to the presumption" that the defendant was innocent as the trial court did in this case. Transcript at 101. Thus, we cannot say as we did in Lee that the trial court's instructions "do not satisfy

13

Robey's dictate that a jury be specifically instructed, if requested by a defendant, 'that the jury should fit the evidence to the presumption that a defendant is innocent. . . .'" 964 N.E.2d at 865 (quoting Simpson, 915 N.E.2d at 520).

## II.

The next issue is whether the evidence is sufficient to sustain Brakie's conviction for child molesting as a class A felony. When reviewing the claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the verdict and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id. Ind. Code § 35-42-4-3 provides in part: "[a] person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony" and that "[h]owever, the offense is a Class A felony if . . . it results in serious bodily injury . . . ."

Brakie argues that the evidence is insufficient to support his conviction because "all of the testimony regarding any of the elements of I.C. 35-42-4-3 or of the alleged incident is based upon the testimony and statement of the alleged victim, a four (4) year old child." Appellant's Brief at 6. Brakie contends that N.J. told at least three (3) different stories during the course of the investigation and trial and that the incredible dubiosity rule should apply.

14

The State argues that the incredible dubiosity rule does not apply, that the rule is limited to cases where a sole witness presents inherently contradictory testimony, and that N.J.'s trial testimony was not inherently contradictory, equivocal, or unworthy of credit. The State also contends that N.J.'s trial testimony is not incredibly dubious merely because she made inconsistent pretrial statements and that it was for the jury to resolve any conflicting evidence.

To the extent Brakie asserts that the incredible dubiosity rule requires reversal of his conviction, we note that the rule applies only in very narrow circumstances. See Love v. State, 761 N.E.2d 806, 810 (Ind. 2002). The rule is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

Id.

Brakie points to the testimony of Martin, Johnson, N.J., and Wood for the idea that N.J. told at least three different stories. On the pages cited by Brakie referring to N.J.'s testimony, N.J. testified that Brakie hurt her in the back room by putting a screwdriver in her vagina and that she told her mother that she fell down. On redirect examination, N.J. indicated that Brakie pushed her down, pulled down her tights, and stuck something into her vagina which hurt. N.J. also testified that she was scared to tell her mother that Brakie pushed her down and tried to stick something in her, and she testified on direct

examination that Brakie had told her that if she told anyone he would give her a "butt whipping." Transcript at 208.

Brakie fails to show that the testimony of N.J. was inherently contradictory. To the extent her testimony conflicted with the testimony of Martin, Johnson, or Wood, or considering Brakie's argument that N.J.'s testimony was less believable, we note that this is an issue of witness credibility. The function of weighing witness credibility lies with the trier of fact, not this court. Whited v. State, 645 N.E.2d 1138, 1141 (Ind. Ct. App. 1995). We cannot reweigh the evidence and judge the credibility of the witnesses. See Jones, 783 N.E.2d at 1139. Further, we cannot say that N.J.'s testimony that Brakie pushed her down, removed her tights, and stuck a screwdriver into her vagina was so inherently improbable that no reasonable person could believe it. Brakie does not show how the testimony against him was somehow internally inconsistent and has not shown N.J.'s testimony to be incredibly dubious. We also note that Keller, the sexual assault nurse examiner, examined N.J. and observed that she had no bruising to her external genitalia, but had a very large tear that was still actively bleeding which almost extended to her rectum, and that N.J.'s injuries were not consistent with a straddle fall but instead were consistent with a tool being used and with someone trying to push an object into her vagina.

Based upon our review of the evidence and testimony most favorable to the conviction as set forth in the record and above, we conclude that sufficient evidence exists from which the trier of fact could find Brakie guilty beyond a reasonable doubt of child molesting as a class A felony. See Hampton v. State, 921 N.E.2d 27, 29 (Ind. Ct.

16

App. 2010) (finding that the testimony of the seven-year-old victim was not incredibly dubious and concluding that based upon the record the State presented evidence of probative value from which a reasonable jury could have found the defendant guilty of child molesting as a class A felony), reh'g denied, trans. denied; Surber v. State, 884 N.E.2d 856, 869 (Ind. Ct. App. 2008) (holding that the testimony of a six-year-old victim was not incredibly dubious despite some inconsistencies, and that such inconsistencies were appropriate to the circumstances presented, the age of the witness, and the passage of time between the incident and the time of her statements and testimony), trans. denied.

For the foregoing reasons, we affirm Brakie's conviction for child molesting as a class A felony.

Affirmed.

ROBB, C.J., and BARNES, J., concur.