## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 30 2019, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan G. Chance
JC Law Offices
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark Allen Farmer,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 30, 2019

Court of Appeals Case No.
18A-CR-1745

Appeal from the Vanderburgh Superior Court

The Honorable Robert J. Pigman, Judge

Trial Court Cause No.
82D03-1702-F1-871

**Crone, Judge.**

# Case Summary

[1] Mark Allen Farmer appeals his convictions, following a jury trial, for level 1 felony child molesting and level 4 felony child molesting. He asserts that the trial court abused its discretion and/or committed fundamental error in the admission of evidence and other procedural decisions. He further asserts that the evidence is insufficient to support his convictions. Finding no abuse of discretion or fundamental error, and further finding sufficient evidence to support the convictions, we affirm.

# Facts and Procedural History

[2] The evidence most favorable to the verdicts indicates that Krystal Kaiser-Wells and Peter Kaiser are the biological parents of M.K. Krystal and Peter were married at the time of M.K.'s birth, but they divorced in 2015. Peter subsequently married Katelyn Farmer. Katelyn's father is fifty-six-year old Farmer.

[3] On February 5, 2017, five-year-old M.K. attended a Super Bowl party with her mother Krystal and her siblings. M.K. and some other young children were in the living room playing with naked Barbie dolls. At some point, M.K. was talking aloud so that the others in the room could hear, and stated, "Poppy touches my privates." Tr. Vol. 2 at 106-07. M.K. was referring to Farmer, her

stepgrandfather.[1] M.K. and her stepsister, eight-year-old E. (Farmer's biological granddaughter) had spent the night at Farmer's home the previous night. After Krystal heard what M.K. said, Krystal asked M.K. if maybe the touching was by accident, or while tickling or playing. M.K. explained, "[N]o like under my pants so it can't be an accident." *Id*. at 109. Krystal "freaked out" and "just packed up the kids" and left the party. *Id*. Krystal immediately tried to call M.K.'s father, Peter, but was unable to reach him. Krystal then called Peter's mother (M.K.'s paternal grandmother), Ann, who offered to come over to Krystal's house to talk to M.K. since Krystal was so upset and crying.

[4] Ann arrived and sat on the couch and spoke to M.K. while Krystal used her smartphone to record the conversation. M.K. told Ann that after E. went upstairs to sleep while the two girls were at Farmer's house, M.K. was alone in the basement with Farmer. M.K. stated that Farmer touched her "privates." State's Ex. 1. M.K. told him to stop, but he did not stop. M.K. said that this was not the first time Farmer had touched her privates. He had touched her privates every time she spent the night at his house. M.K. used a stuffed animal sloth to demonstrate to Ann where and how Farmer had touched her. When the conversation ended, Krystal put M.K. to bed. Ann left and went to Peter's house to talk to him and his wife. Ann, Peter, his wife Kaetlyn, and Krystal all

---

[1] The record indicates that M.K. also calls her other stepgrandfather "Poppy." However, there is ample evidence in the record that clarifies and establishes that M.K. was referring to Farmer.

spoke on the phone that evening and agreed that a report should be made to Child Protective Services ("CPS"). Krystal called CPS the next morning.

[5] Two days later, forensic interviewer Molly Elfreich conducted an interview with M.K. at Holly's House.[2] The interview was videotaped. M.K. told Elfreich that Farmer played with her privates, that he did so every time she went to his house, that she did not like it, and that she told him to stop. M.K. pointed to the vaginal area on an anatomically correct picture to identify where Farmer had touched her. M.K. stated that she called that area her "kitty" and that Farmer used his finger to play with her kitty. State's Ex. 6. He did so while M.K. sat on his lap in his favorite chair. M.K. said that Farmer touched the outside of her kitty, and when Elfreich asked M.K. if Farmer also touched the inside of her kitty, M.K. nodded her head in the affirmative. When later asked to demonstrate how Farmer touched her on the "inside," M.K. moved her fingers up and down and in a circular motion, and verbally stated that he moved his fingers "up and down and wiggled it." *Id.*

[6] Vanderburgh County Sheriff's Office Detective Matthew Elrod interviewed Farmer on February 9, 2017. Farmer initially denied that he touched M.K. inappropriately. Later, he acknowledged that he may have touched or rubbed near M.K.'s vagina. He explained that he may have touched M.K's "cooch" accidentally while bouncing her on his knee, unbuttoning her pants, or

---

[2] This Court has described Holly's House as "a child and adult advocacy center located in Evansville." *Brakie v. State*, 999 N.E.2d 989, 992 (Ind. Ct. App. 2013), *trans. denied* (2014); *see also* Tr. Vol. 2 at 169.

swinging her in the air like an airplane. State's Ex. 9. For example, he stated, "[W]hen she was sitting on my lap and bouncing around I might have went inside her pants … I didn't know her pants were unbuttoned … but I touched her …." *Id.* When asked specifically whether his finger touched the outside of M.K.'s vagina, Farmer said, "[I]t might have[.]" *Id.* Farmer further described an incident where he was trying to button M.K.'s pants and had his hands inside her pants. *Id.* Farmer admitted that M.K. might not be lying about where his fingers were, that she might have pushed his hand away, and that she might have told him to stop. *Id.*

[7] The State charged Farmer with three counts of level 1 felony child molesting. At some point, the State discovered that the recording equipment that had been newly installed at Holly's House just before M.K.'s interview had been installed improperly. Specifically, only one audio line had been installed into both the adult interview room and the child interview room, causing the sound from both rooms to feed into the same line. Because there was an adult interview being conducted at the same time as M.K.'s interview, the audio from both interviews can be heard on the videotape for M.K.'s interview. Accordingly, the State sent the audio from M.K.'s interview to the Federal Bureau of Investigation ("FBI") lab in Quantico, Virginia, to have the audio on M.K.'s interview enhanced while diminishing the volume and interference caused by the audio stream from the adult interview. After receiving the FBI enhanced audio, the State used a "screen capture program" editing software to combine the new audio with the video, attempting to match the audio with the video as

closely as possible.  Tr. Vol. 2. at 178.  Prior to trial, on July 13, 2017, the State filed a motion to admit M.K.'s videotaped statement pursuant to the protected person statute.  Following a hearing, the trial court granted the State's motion on August 30, 2017.  On November 27, 2017, the State filed an amended information, changing the second level 1 felony count to a level 4 felony and dismissing the third count.

[8]     A jury trial was held on December 18 and 19, 2017.  In addition to hearing the live testimony of several witnesses, including both M.K. and Farmer, the jury was permitted to view the enhanced audio version of the videotape of the Holly's House forensic interview as well as the videotape of Farmer's police interview.  The jury found Farmer guilty as charged.  The trial court imposed consecutive sentences of twenty-five years for the level 1 felony conviction and six years for the level 4 felony conviction, resulting in a thirty-one-year aggregate sentence.  This appeal ensued.

## Discussion and Decision

## Section 1 – The trial court did not abuse its discretion or commit fundamental error in admitting the enhanced forensic interview videotape.

[9]     Farmer makes several assertions that the trial court abused its discretion and/or committed fundamental error in the admission of evidence.  Accordingly, we begin by emphasizing that decisions regarding the admission of evidence are entrusted to the discretion of the trial court. *Laird v. State*, 103 N.E.3d 1171, 1175 (Ind. Ct. App. 2018), *trans. denied*.  We review the trial court's evidentiary

rulings for prejudicial abuse of the court's discretion. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). The court abuses its discretion only if its decision regarding the admission of evidence is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id.* In determining whether improperly admitted evidence has prejudiced the defendant, we assess the probable impact of that evidence on the jury in light of all the other properly admitted evidence. *Id.* If independent, properly admitted evidence of guilt supports the conviction, the error is harmless. *Id.*

[10]     Moreover, to preserve a claim of evidentiary error for purposes of appeal, a defendant must make a contemporaneous objection at the time the evidence is introduced. *Laird*, 103 N.E.3d at 1175 (citing *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010)). "The purpose of this rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors." *Id.* Even if a party objects at trial, he may not object to the admission of evidence on one ground at trial and seek reversal on appeal based on different grounds. *Boatner v. State*, 934 N.E.2d 184, 187 (Ind. Ct. App. 2010). Put another way, advancing a new ground for relief on appeal results in waiver of the claim. *Id.*

[11]     Farmer first asserts that the trial court abused its discretion and committed reversible error in admitting into evidence State's Exhibit 6, which was a videotape consisting of the enhanced audio version of M.K.'s forensic interview combined with the original video. On appeal, Farmer relies on our supreme court's opinion in *Lamar v. State*, in which the court held that the admission of a sound recording should be preceded by certain foundational requirements

disclosing that the recording is, inter alia, of such clarity as to be intelligible and enlightening to the jury. 258 Ind. 504, 512-13, 282 N.E.2d 795, 800 (1972). The test of the admissibility of a sound recording stated in *Lamar* applies with equal logic to the admissibility of a videotape. *Smith v. State*, 272 Ind. 328, 331, 397 N.E.2d 959, 962 (1979). The court adopted the *Lamar* test "in order to eliminate the introduction of recordings that are of such poor quality that they might lead to jury speculation as to their contents." *Id*. However, uniform perfection is not required, and, in order for a videotape to be admissible, every word need not be intelligible. *Id.*; *Brown v. State*, 577 N.E.2d 221, 231 (Ind. 1991), *cert. denied* (1992). It is only necessary that the tape, when taken as a whole, does not lead the jury to speculate about its contents. *Brown*, 577 N.E.2d at 231.

[12] The central basis for Farmer's argument against the admission of State's Exhibit 6 is that "at crucial points in the videotape, the video and audio portions are not synchronized … at other crucial points, the audio portion is completely unintelligible …." Appellant's Br. at 17. This, however, was nowhere close to the basis of Farmer's objection at trial. Instead, during trial, Farmer objected to the admission of the videotape "on the grounds that the tape has been changed in a sense that it's been changed from its original volume, it's been changed from its originality." Tr. Vol. 2 at 181. The State responded that the volume enhancement simply clarified the audio and in no way changed the content of the videotape. The State further stated that it was also offering for admission the original videotape in its original format, and that the jury could refer to the

original format if there were any questions. The trial court overruled Farmer's objection, admitted State's Exhibit 6 into evidence, and permitted the videotape to be played for the jury.[3] Because Farmer argues on appeal that State's Exhibit 6 was inadmissible based on grounds that he did not argue below, his claim of error is waived. *See Boatner,* 934 N.E.2d at 187.

[13] Farmer maintains that, even assuming his objection at trial failed to preserve his claim of error, the trial court's decision to admit the videotape constituted fundamental error. The fundamental error doctrine is very narrow, and it arises only when there are "clearly blatant violations of basic and elementary principles, and the harm or potential for harm could not be denied." *Warriner v. State*, 435 N.E.2d 562, 563 (Ind. 1982). Fundamental error occurs only when the error is so prejudicial that a fair trial is rendered impossible. *Benefield v. State*, 945 N.E.2d 791, 801 (Ind. Ct. App. 2011). The fundamental error doctrine provides relief only in egregious circumstances. *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016).

[14] After reviewing the entirety of the videotape, we do not agree with Farmer's contention that the recording was of such poor quality that it was error, fundamental or otherwise, to admit it into evidence.[4] We acknowledge that the

---

[3] The trial court also admitted into evidence the original Holly's House forensic interview videotape, State's Exhibit 4, and the enhanced audio-only recording of M.K.'s forensic interview, State's Exhibit 5. However, only State's Exhibit 6, a combination of the enhanced audio with the original video, was published and played for the jury.

[4] Our supreme court recently stated that appellate courts review video evidence just like any other evidence. *Love v. State*, 73 N.E.3d 693, 698 (Ind. 2017).

audio and video are indeed unsynchronized and that some words are inaudible. We note, however, that the majority of the interview is easily heard and understood despite the presence of the background noise created by the other interview. We further note that the lack of synchronization between the audio and video was consistent and obvious, and would have been obvious to the jury as well, but it did not impede our ability to decipher and understand the contents of the interview. In sum, we cannot say that the quality of the videotape was so poor as to negate its probative value.

[15] Farmer complains that the "unsynchronized video and audio and the unintelligible audio" rendered State's Exhibit 6 so confusing that it would have led the jurors to engage in speculation about its contents, thus making a fair trial impossible. Appellant's Br. at 21. However, the audio and synchronization issues with the videotape were fully explained to jurors prior to it being played, and the jurors were provided with a transcript of the videotape, as supplemented by the forensic interviewer's recollection, to aid them while viewing the videotape, obviating any need for speculation as to its contents.[5] Further, as we discuss more fully below, the forensic interviewer was properly

---

[5] The State requested that it be allowed to provide a transcript of the forensic interview to the jury "to assist given the technical difficulties." Tr. Vol. 2 at 184. The State clarified that the transcript would simply be to "aid the jury" and was not offered for admission into evidence. *Id*. at 185. It is within the sound discretion of the trial court to furnish the jurors with copies of a transcript to assist and aid them in interpreting inaudible or indistinct portions of a tape-recorded statement. *Small v. State*, 736 N.E.2d 742, 748-49 (Ind. 2000). Farmer objected based on the best evidence rule and the fact that the forensic interviewer had made corrections to the transcript "mostly" about her recollection as to whether M.K. "shook her head yes or no" in response to certain questions. Tr. Vol. 2 at 197. The trial court overruled the objection but admonished the jury that "the tape is the evidence" and that if there is any difference between the transcript and the tape "you've got to rely on what's on the tape." *Id*. at 187.

permitted to testify after the videotape was played for the jury and to explain her personal recollection of what occurred during the interview, again obviating any impermissible speculation by the jurors. Under the circumstances, we find no error in the trial court's admission of the videotape.

## Section 2 – The trial court did not abuse its discretion in admitting the forensic interviewer's testimony regarding her personal observations during the interview.

[16] After State's Exhibit 6 was played for the jury, the State called the forensic interviewer, Elfreich, as a witness to provide her personal account of what happened during the forensic interview. The trial court permitted Elfreich to testify, over Farmer's best evidence objection, regarding her personal recollection that when she asked M.K., "Does [Farmer] ever touch the inside of your kitty?" M.K. "nodded her head" in the affirmative. *Id*. at 192. Farmer complains that, due to the lack of synchronization on the videotape, an affirmative head nod by M.K. cannot be seen in response to Elfreich's question, and that Elfreich should not have been permitted to contradict the videotape.

[17] We note that the best evidence rule simply refers to the principle that when trying to prove the content of a document, recording, or photograph, an original is the best evidence of that content. Ind. Evidence Rule 1002. The rule also applies to video recordings. *Wise v. State*, 26 N.E.3d 137, 143 (Ind. Ct. App. 2015), *trans. denied*. Our supreme court has explained that the purpose of the best evidence rule "is to assure that the trier of the facts has submitted to it the evidence upon any issue that will best enable it to arrive at the truth." *Crosson v.*

*State*, 268 Ind. 511, 518, 376 N.E.2d 1136, 1141 (1978). "However, when a witness has personal knowledge of the facts contained in the best evidence, the best evidence rule will not bar the [witness's] testimony since the witness is not being asked to reveal the contents of the best evidence, but rather is being asked to recall his own independent observations." *Lopez v. State*, 527 N.E.2d 1119, 1125 (Ind. 1988).

[18]     Unquestionably, Elfreich had personal knowledge of the forensic interview and was being asked to recall her own personal observations of what she saw and heard during the interview. She was not being asked to reveal the contents of the videotape. Therefore, her testimony did not implicate the best evidence rule as far as the videotape is concerned. In light of the foregoing, we find no best evidence rule violation, and the trial court did not abuse its discretion in admitting Elfreich's testimony.[6]

---

[6] Although a transcript of the videotape was initially given to the jury simply as an aid, after defense counsel's extensive cross-examination of Elfreich, the State requested that the original transcript of the forensic interview containing Elfreich's handwritten corrections be admitted into evidence. The State noted, "There's been substantial questioning of Mrs. Elfreich, um, implying to the jury that there was something misleading in the notes she made [in] that transcript that was provided to the jury. So I would ask that that transcript be now submitted into evidence so they can see for themselves as they judge her testimony." Tr. Vol. 2 at 206. The trial court admitted the transcript without objection by defense counsel. Transcripts should ordinarily not be admitted into evidence unless both sides stipulate to their accuracy and agree to their use as evidence. *Small*, 736 N.E.2d at 748-49. The record here reveals that although defense counsel clearly did not stipulate to the accuracy of the transcript, he did not object to the admission of the transcript and actually explicitly invited the admission of the transcript into evidence as part of a deliberate trial strategy. *See* Tr. Vol. 2 at 194-96, 206-08; Tr. Vol. 3 at 152. As such, any error in the admission of the original transcript of the videotape was invited and not subject to appellate review. *See Batchelor v. State*, No. 18S-CR-436, 2019 WL 1236692, at *9-10 (Ind. Mar. 18, 2019) (clarifying invited error doctrine and emphasizing that lack of objection is not enough to invite an error but there must be some evidence that the error resulted from appellant's affirmative actions or as part of deliberate well-informed trial strategy).

## Section 3 – Farmer has waived our review of his claim of undue prejudice based upon drumbeat repetition of testimony.

[19] Farmer next contends that the trial court's admission of M.K's videotaped forensic interview, as well as allowing additional witnesses to repeat her molestation allegations prior to her being called to testify, amounted to the type of drumbeat repetition of her testimony disapproved of by our supreme court in *Modesitt v. State*, 578 N.E.2d 649, 654 (Ind. 1991) (disapproving of "drumbeat repetition of the declarant's statements prior to the declarant's testifying and being subject to cross examination."). Specifically, he asserts that the combined testimonies of all the State's witnesses unduly prejudiced the jury.

[20] Although at trial Farmer launched a continuing hearsay objection to the testimony of the State's witnesses, he made no specific objection based on drumbeat repetition, and therefore he has waived his appellate argument premised upon *Modesitt*. *See Norris v. State*, 53 N.E.3d 512 (Ind. Ct. App. 2016) (finding *Modesitt* drumbeat argument waived on appeal for failing to object on those grounds at trial). In addition, Farmer made no claim of fundamental error in his principal appellate brief. Therefore, the issue is waived, and we decline to address it further. *See Curtis v. State*, 948 N.E.2d 1143, 1148 (Ind. 2011) (concluding that failure to raise fundamental error regarding issue in principal appellate brief results in waiver of issue).

# Section 4 – The trial court did not commit fundamental error in admitting Farmer's videotaped statement to police.

[21]     We now address Farmer's assertion that the trial court committed fundamental error in admitting his videotaped statement to police as evidence of both level 1 and level 4 felony child molesting. He first argues that the statement was inadmissible because the State failed to present independent evidence of the corpus delicti. In *Shinnock v. State*, 76 N.E.3d 841 (Ind. 2017), our supreme court explained as follows:

> In Indiana, a person may not be convicted of a crime based solely on a nonjudicial confession of guilt. Rather, independent proof of the corpus delicti is required before the defendant may be convicted upon a nonjudicial confession. Proof of the corpus delicti means "proof that the specific crime charged has actually been committed by someone." Thus, admission of a confession requires some independent evidence of commission of the crime charged. The independent evidence need not prove that a crime was committed beyond a reasonable doubt, but merely provide an inference that the crime charged was committed. This inference may be created by circumstantial evidence. The purpose of the corpus delicti rule is to prevent the admission of a confession to a crime which never occurred. The State is not required to prove the corpus delicti by independent evidence prior to the admission of a confession, as long as the totality of independent evidence presented at trial establishes the corpus delicti.

*Id*. at 843 (citations omitted). This Court has concluded that the corpus delicti rule does not require the State to make a prima facie case as to each element of

the offenses charged. *Seal v. State*, 105 N.E.3d 201, 210 (Ind. Ct. App. 2018), *trans. denied*.

[22] Here, there was ample independent evidence to provide a reasonable inference that M.K. was the victim of more than one instance of child molesting and that Farmer was the perpetrator. This evidence includes M.K.'s videotaped forensic interview, which we have already concluded was properly admitted into evidence, Elfreich's testimony, which was also properly admitted, and M.K.'s direct testimony during trial that Farmer touched her vagina on more than one occasion. As stated above, and contrary to Farmer's assertions, the State was not required to present independent evidence as to each element of the offenses. Rather, the State was simply required to present admissible independent evidence, circumstantial or otherwise, that provided an inference that the crimes charged were committed. Under the circumstances presented, the purpose of the corpus delicti rule was satisfied, and Farmer has failed to demonstrate that fundamental error occurred on this basis.

[23] Farmer also asserts that the trial court committed fundamental error in admitting his videotaped statement because some of Detective Elrod's questions during the interview could be interpreted as "indirect vouching" for M.K.'s credibility. Appellant's Br. at 34. Upon our review of the relevant portions of the videotape, we disagree.

[24] Vouching testimony is generally prohibited under Indiana Evidence Rule 704(b), which states: "Witnesses may not testify to opinions concerning intent,

guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." "Such testimony invades the province of the jury because it is essential that the trier of fact determine the credibility of the witnesses and the weight of the evidence." *Hinesley v. State*, 999 N.E.2d 975, 985 (Ind. Ct. App. 2013), *trans. denied* (2014).

[25] This Court has acknowledged that statements made by police officers during interrogations or interviews potentially can be problematic under Evidence Rule 704(b). *Hamilton v. State*, 43 N.E.3d 628, 634 (Ind. Ct. App. 2015). However, in *Hamilton*, we found no error in the admission of police interview questions or statements that were designed to elicit a response from the defendant as opposed to statements of fact. *Id.* We further emphasized that statements made during a police interview do not carry the same vouching influence as trial testimony to that effect. *Id.* Similar to the statements at issue in *Hamilton*, Detective Elrod's question asking Farmer if he was "calling M.K. a liar" and his statements that M.K.'s "story hadn't changed" were simply attempts to elicit a response from Farmer as opposed to statements of fact. State's Ex. 9. Moreover, as in *Hamilton*, Detective Elrod's statements were made as part of a police interview and not as trial testimony. Farmer acknowledges, but simply urges us to disregard, *Hamilton* and the reasoning upon which it is based. We decline that invitation. Detective Elrod's questions and statements did not amount to improper vouching in the context in which they were made, and therefore the admission of Farmer's videotaped statement did not constitute fundamental error.

## Section 5 – The trial court did not abuse its discretion in allowing M.K. to testify from the prosecutor's counsel table.

[26] In addition to challenging the trial court's evidentiary decisions, Farmer also challenges the trial court's decision, over his objection, to allow M.K. to testify from the prosecutor's counsel table as opposed to from the witness stand. Farmer is correct that "Indiana law is 'distinctly biased' against trial procedures which tend to emphasize the testimony of any single witness." *Shaffer v. State*, 674 N.E.2d 1, 5 (Ind. Ct. App. 1996), *trans. denied* (1997). Nevertheless, "recognizing the potential trauma facing a child in court, Indiana trial courts have permitted children to testify under special conditions despite the possibility that it would emphasize their testimony." *Id*. (citing *Stanger v. State*, 545 N.E.2d 1105, 1112 (Ind. Ct. App. 1989) (upholding trial court's decision to allow child witnesses to testify with support person sitting behind him/her and with chair turned away from defendant and toward jury); *Hall v. State*, 634 N.E.2d 837, 841-42 (Ind. Ct. App. 1994) (upholding trial court's decision to allow child to testify with guardian sitting next to her); *Brady v. State*, 575 N.E.2d 981, 989 (Ind. 1991) (allowing child to testify by two-way closed-circuit television)). The manner in which a party is entitled to question a witness of tender years, especially in embarrassing situations, is left largely to the discretion of the trial court. *Id*. (citing *Jackson v. State*, 535 N.E.2d 1173, 1174 (Ind.1989)). We will reverse the trial court's decision only if there is a clear abuse of such discretion. *Id*.

[27]   Here, the trial court permitted then six-year-old M.K. to be sworn in and to testify from the prosecutor's counsel table, explaining to the jury that the court was doing so because "of her young age." Tr. Vol. 2 at 216. Due to the embarrassing and traumatic nature of M.K.'s allegations against Farmer, and in light of the ample legal authority supporting similar accommodations, we cannot say that this was unreasonable. The trial court specifically admonished the jury that making accommodations for witnesses was an extremely common practice, that it was "not an endorsement of her testimony," and that the jury should not "infer anything" about the facts of the case based upon the accommodation. *Id*. The trial court did not abuse its discretion in allowing M.K. to testify from the prosecutor's counsel table.

## Section 6 – Sufficient evidence supports Farmer's convictions.

[28]   Finally, Farmer challenges the sufficiency of the evidence supporting his convictions for both level 1 and level 4 felony child molesting. In reviewing a challenge to the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences from it supporting the verdicts. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We neither reweigh the evidence nor reassess witness credibility. *Id*. We will affirm a conviction if a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id*.

[29]   To convict Farmer of level 1 felony child molesting, the State was required to prove that Farmer, a person of at least twenty-one years of age, knowingly or intentionally performed "other sexual conduct" with M.K., a child under

fourteen years of age. Ind. Code § 35-42-4-3(a). Indiana Code Section 35-31.5-2-221.5 defines "other sexual conduct" in relevant part as "the penetration of the sex organ or anus of a person by an object." Our case law has established that a finger is an object for purposes of the child molesting statute. *Simmons v. State*, 746 N.E.2d 81, 86 (Ind. Ct. App. 2001), *trans. denied*. It is also well established that the female sex organ includes the external genitalia and the slightest penetration of the female sex organ constitutes child molesting. *See, e.g.*, *Short v. State*, 564 N.E.2d 553, 559 (Ind. Ct. App. 1991) (concluding that penetration of female sex organ includes penetration of external genitalia).

[30] Farmer asserts that M.K.'s use of the term "kitty" to describe where he touched her was insufficient to establish that he actually "touched her on her sex organ or any part of her genitals or that he penetrated the external genitalia." Appellant's Br. at 44. We initially note that a conviction for child molesting may rest solely upon the uncorroborated testimony of the victim, "despite the child's limited sexual vocabulary or unfamiliarity with anatomical terms." *Stewart v. State*, 768 N.E.2d 433, 436 (Ind. 2002), *cert. denied*. The question is "whether there was sufficient evidence before the jury so that it could reach the conclusion that [the child's terminology] … refer[ed] to the sex organ." *Id*. In her forensic interview, M.K. stated that she uses the word "kitty" to refer to her "private parts" and that Farmer touched her "kitty" underneath her underwear with his finger. State's Ex. 6. She identified her "kitty" on an anatomically correct drawing by circling and pointing to the vaginal area. *Id*. During her direct trial testimony, M.K. confirmed that Farmer touched her "[k]itty" on

"three or two" different occasions, and she also confirmed that her "kitty" referred to the vaginal area that she had circled on the drawing during the forensic interview. Tr. Vol. 2 at 219-20. Moreover, in his statement to Detective Elrod, Farmer admitted that he may have inadvertently touched M.K.'s "cooch" on multiple occasions. State's Ex. 9. There was sufficient evidence from which a jury could reasonably infer that both "kitty" and "cooch" referred to M.K.'s vagina.

[31] Regarding penetration, Elfreich testified that M.K. nodded her head in the affirmative when asked if Farmer had ever touched the "inside" of her "kitty." Tr. Vol. 2 at 192. M.K. further demonstrated how Farmer touched her by moving her finger up and down and in a circular motion. *Id.* at 193. Farmer's assertion that this evidence is "hopelessly vague" regarding penetration, *see* Appellant's Br. at 47, is simply a request for us to reweigh the evidence and reassess witness credibility, and we will not. There was sufficient evidence from which a jury could reasonably infer that Farmer penetrated, however slightly, M.K.'s external genitalia.

[32] As for the level 4 felony child molesting conviction, the State was required to prove that Farmer performed fondling or touching of M.K., a child under fourteen years of age, with intent to arouse or to satisfy the sexual desires of himself of M.K. *See* Ind. Code § 35-42-4-3(b). "The intent element of child molesting may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual consequence to which such conduct usually points." *Carter v. State*, 31 N.E.3d 17, 30 (Ind. Ct. App. 2015),

*trans. denied*.  Farmer maintains that the State failed to prove that he had the requisite intent to arouse the sexual desires of himself or M.K.  Rather, he suggests that the evidence, at most, shows two or three occasions of "inadvertent" touching.  Appellant's Br. at 48.

[33]  As detailed above, M.K. stated that Farmer touched her vagina under her underpants on more than one occasion, and she described in some detail how Farmer touched her by moving his finger up and down and in a circular motion.  The jury could reasonably infer from this evidence that Farmer knowingly touched M.K. and did so with the intent to arouse or satisfy his or her sexual desires.  *See Amphonephong v. State*, 32 N.E.3d 825, 833 (Ind. Ct. App. 2015) (holding that child's testimony that defendant repeatedly put his hand in her pants and touched her genitals was sufficient evidence of intent to arouse or satisfy defendant's sexual desires).  The jury was not obligated to accept Farmer's claims that his behavior was accidental or inadvertent, and his assertion on appeal is simply another request that we reweigh the evidence and reassess witness credibility, and we will not.  Sufficient evidence supports Farmer's convictions for both level 1 and level 4 felony child molesting.  Accordingly, we affirm.

[34]  Affirmed.


Vaidik, C.J., and Mathias, J., concur.